IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| SKY CABLE, LLC, <u>et al.</u>, | ) |
| | ) |
|     Plaintiffs, | )   Civil Action No. 5:11cv00048 |
| | ) |
| v. | ) |
| | ) |
| RANDY COLEY, <u>et al.</u>, | )   By:  Michael F. Urbanski |
| | )         United States District Judge |
|     Defendants. | ) |

## **MEMORANDUM OPINION**

This matter is before the court on defendant DIRECTV's Motion to Dismiss for Failure to State a Claim, or, in the Alternative, to Transfer for Binding Arbitration (Dkt. # 65), defendant Kimberli Coley's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 75), and defendant Randy Coley's Motion to Stay or, in the Alternative, to Dismiss for Failure to Join Necessary Party (Dkt. # 78). A hearing on these motions was held on March 7, 2012.

Earlier that morning, a hearing had been scheduled in the United States Bankruptcy Court on the Chapter 11 petition of East Coast Cablevision, LLC. While East Coast Cablevision, LLC is not a named defendant in the instant action, defendant Randy Coley is its sole member and manager, and Randy Coley asserts that the entity is an indispensible party to this case. There was some suggestion made on brief that at this bankruptcy hearing, the automatic stay was expected to be lifted, the parties would agree to allow plaintiff to file a second amended complaint, and some, if not all, of the issues involved in the instant motions would be mooted. The bankruptcy hearing was continued to a later date, however, and the parties represent that the stay as to East Coast Cablevision, LLC remains in effect. Thus, these motions are justiciable and ripe for adjudication.

**I.**

This case involves allegations of stolen DIRECTV programming. In their amended complaint, plaintiffs allege Sky Cable was an authorized DIRECTV affiliate responsible for selling DIRECTV programming to and servicing programming for various commercial establishments. As such, Sky Cable was entitled to receive commissions on the programming delivered to these establishments. Plaintiffs claim that in June 1999, defendant Randy Coley fraudulently applied to DIRECTV for authority to purchase commercial satellite television programming for a private cable television system at the Massanutten Resort ("Massanutten"). The SMATV (Satellite Master Antenna Television) Agreement, prepared by Coley and purportedly executed between DIRECTV and Massanutten,[1] provided for DIRECTV's signal to be delivered to 168 units at Massanutten. DIRECTV assigned the account to Sky Cable as authorized DIRECTV affiliate.

Sky Cable alleges that it discovered that the DIRECTV signal authorized for the 168 units governed by the SMATV Agreement was actually being retransmitted by Randy Coley to many other properties located within Massanutten, numbering over 2500 units. Plaintiffs allege that Randy Coley billed and collected satellite television programming fees associated with these 2500 plus units, but only paid DIRECTV fees associated with 168 units. According to plaintiffs, because Randy Coley grossly underreported to DIRECTV the number of units receiving a signal, Sky Cable has been damaged because it did not receive the commissions to which it was entitled.

In their amended complaint, plaintiffs portray defendant Kimberli Coley, Randy Coley's wife, as a co-conspirator in this scheme and allege that she opened a bank account in her name into which proceeds from this illicit scheme were deposited. Plaintiffs name the Coleys in ten

---

[1] Plaintiffs allege that the signatory to this agreement on behalf of Massanutten, Bladen Hadley, was an employee of Coley and had no authority to bind Massanutten.

2

counts of violations of both federal and state law, including, <u>inter alia</u>, receiving and intercepting satellite signals, money laundering, RICO, fraud and business conspiracy. Plaintiffs also name DIRECTV in one count of the amended complaint for breach of contract and negligence, claiming DIRECTV breached its duty to investigate this alleged fraud, which plaintiffs assert they reported to DIRECTV on numerous occasions. DIRECTV has filed a cross-claim against Randy Coley for fraudulently transmitting DIRECTV programming to approximately 2500 units at Massanutten without proper payment.

## II.

### DIRECTV's Motion to Dismiss for Failure to State a Claim, or, in the Alternative, to Transfer for Binding Arbitration (Dkt. # 65)

DIRECTV argues in its motion that the allegations of negligence and breach of contract set forth in plaintiffs' amended complaint fail to state a claim upon which relief can be granted. DIRECTV further asserts that even if plaintiff had stated a valid claim, any such claim must be arbitrated in Los Angeles, California, pursuant to the arbitration provision in the DIRECTV SMATV Affiliate Agreement ("Affiliate Agreement") between DIRECTV and Sky Cable. At the March 7th hearing, counsel for DIRECTV, concerned with waiver, argued that the court must first decide the issue of arbitrability before addressing the merits of its 12(b)(6) motion. Indeed, pursuant to section three of the Federal Arbitration Act ("FAA"), a party may lose its right to arbitrate if it is "'in default in proceeding with such arbitration.'" <u>Forrester v. Penn Lyon Homes, Inc.</u>, 553 F.3d 340, 342 (4th Cir. 2009) (quoting 9 U.S.C. § 3). The term "default" used in this context is "'akin to waiver;'" however, given the strong federal policy favoring arbitration, the circumstances giving rise to default are limited and "'are not to be lightly inferred.'" <u>C.B. Fleet Co., Inc. v. Aspen Ins. UK Ltd.</u>, 743 F. Supp. 2d 575, 585 (W.D. Va. 2010) (quoting <u>Maxum Founds., Inc. v. Salus Corp.</u>, 779 F.2d 974, 981 (4th Cir. 1985)). "[T]he

general rule is that 'a party will default its right to arbitration if it "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay."'" Id. at 585-86 (quoting Forrester, 553 F.3d at 343 (quoting Maxum Founds., 779 F.2d at 981)).

Plaintiffs do not argue here that DIRECTV has waived its right to arbitrate; indeed, by asking the court to make a threshold determination of arbitrability, DIRECTV seeks to avoid any suggestion of waiver. Finding it appropriate, the court turns first to the question of arbitrability.

The FAA, 9 U.S.C. §§ 1-16, "reflects 'a liberal federal policy favoring arbitration agreements,' and reflects 'a strong congressional preference for arbitration.'" C.B. Fleet Co., 743 F. Supp. 2d at 582 (internal citations omitted). "When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings, and compel arbitration in accordance with the agreement's terms." Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 301 (4th Cir. 2002) (citing 9 U.S.C. §§ 3-4). The question of whether a party has agreed to arbitrate is simply a matter of contract interpretation. C.B. Fleet, 743 F. Supp. 2d at 583 (citing Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996)). "Any doubts the Court may have regarding the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Id. at 582.

**A.**

The Affiliate Agreement contains a broadly-worded arbitration clause that states: "Any dispute or disagreement arising between DIRECTV and Affiliate shall be resolved according to binding arbitration conducted in Los Angeles, California . . . ." Ex. 1 to Jamnback Decl., Dkt. # 65, at ¶ 5.9. Although plaintiffs did not raise this argument during the initial briefing or at the

March 7th hearing, they now contend in a supplemental response to DIRECTV's motion, filed several days after the hearing,[2] that the Affiliate Agreement "is in fact not applicable at all to this case . . . ." Pls.' Supp. Resp., Dkt. # 105, at ¶ 2. Specifically, plaintiffs argue that Sky Cable never took orders to establish DIRECTV programming with Massanutten, never installed any programming services at Massanutten, and never did anything with respect to the Massanutten account, pursuant to certain provisions of the Affiliate Agreement. Id. In short, plaintiffs argue that "[t]he disputes between the Plaintiff and DIRECTV do not rely on any provisions of this contract." Id. at ¶ 2.g.

Plaintiffs' late breaking position is at odds with its own pleadings and earlier briefing on this issue. Although plaintiffs now seek to distance themselves from the Affiliate Agreement in an attempt to avoid arbitration, their claims against DIRECTV alleged in the amended complaint plainly arise out of Sky Cable's affiliate relationship with DIRECTV. Plaintiffs allege that Sky Cable was an authorized affiliate of DIRECTV from 1998 to June 2011.[3] Am. Comp., Dkt. # 59, at ¶ 6. Plaintiffs allege that in its capacity as DIRECTV affiliate, Sky Cable:

> was authorized to sell DIRECTV's satellite television programming to commercial establishments and to handle all servicing for those establishments to which it had sold said services and for those establishments which were assigned to it by DIRECTV for servicing. In the ordinary course of business Massanutten Resort's satellite television programming account was assigned to Sky Cable as the authorized affiliate.

Id. Sky Cable did not initiate the SMATV Agreement between DIRECTV and Massanutten. Nevertheless, Sky Cable claims that "DIRECTV assigned the Massanutten Resort account to Sky

---

[2] DIRECTV, in turn, filed a Motion for Leave of Court to File Supplemental Reply (Dkt. # 106), which will be **GRANTED**.

[3] Such a timeframe is consistent with the date of the Affiliate Agreement, which appears to have been executed in January, 1998. Although the agreement itself is undated, the cover letter addressed to Sky Cable enclosing a copy of the Affiliate Agreement for its records is dated January 21, 1998. Ex. 1 to Jamnback Decl., Dkt. # 65, at 1.

Cable as the authorized DIRECTV Affiliate," as no other DIRECTV affiliate was involved in the alleged contract between DIRECTV and Massanutten. Am. Compl., Dkt. # 59, at ¶ 46. It was in this capacity as affiliate that Sky Cable became suspicious of the number of units at Massanutten Resort receiving the DIRECTV signal, Am. Compl., Dkt. #59, at ¶ 58; began testing signals at various units, id. at ¶¶ 59, 60, 61; reported the alleged fraud to DIRECTV, id. at ¶ 72; and allegedly was damaged by the underreporting of subscriber counts to DIRECTV, id. at ¶ 78. Plaintiffs allege in the amended complaint that "[f]or its representation of DIRECTV, Inc. as an affiliate, Sky Cable was to receive a ten percent (10%) commission or fee."[4] Id. at ¶ 6; see also id. at ¶¶ 12, 48. Plaintiffs' claim for damages arises out of Sky Cable's role as authorized DIRECTV affiliate assigned to the Massanutten account.

In Count 11 of the amended complaint, plaintiffs allege that DIRECTV "was negligent and breached its contractual obligation and duty with respect to and towards its agent, Sky Cable, which has resulted in significant monetary and economic loss to said agent as a result of Defendant DIRECTV's negligence, failure to act and breach of contract." Am. Compl., Dkt. # 59, at ¶ 152. The only contractual relationship alleged in the amended complaint is Sky Cable's relationship as an authorized affiliate. Id. at ¶ 6. Although the Affiliate Agreement is not attached to the amended complaint, there is no suggestion in any of the multiple filings on this issue that there is another document which frames the alleged agency relationship between Sky Cable and DIRECTV.

In their supplemental brief, plaintiffs argue the Affiliate Agreement does not apply to this dispute because Sky Cable never took any orders to establish DIRECTV programming with

---

[4] The court notes that while plaintiffs allege in the amended complaint that they are entitled to a ten percent commission, the Affiliate Agreement provides that DIRECTV will pay the affiliate a fifteen percent commission on all net receipts received by DIRECTV from each affiliate property per month for certain programming services, and a five percent commission on all net receipts per month for all other programming services. See Ex. 1 to Jamnback Decl., Dkt. # 65, at ¶ 2.2(a). The source of this ten percent figure is unclear.

Massanutten, never forwarded any orders to DIRECTV, never installed services and never delivered programming at Massanutten pursuant to certain provisions of the Affiliate Agreement. Plaintiffs frame their argument in their supplemental brief as follows:

> g.  The Massanutten account was assigned to Sky Cable solely because it was the local affiliate in the area, not because of anything which Sky Cable did pursuant to the contract. As a result this SMATV Affiliate Agreement is not applicable at all to this case. The disputes between the Plaintiff and DIRECTV do not rely on any provision of this contract.
>
> h.  While Sky Cable's commissions are a result of the SMATV Affiliate Agreement, Sky Cable is not arguing or claiming that DIRECTV did anything improper with respect to the commissions which were paid to it by DIRECTV. Instead the Plaintiffs['] claims are with the negligence of DIRECTV first in establishing this account and second in investigating the repeated notifications by the Plaintiffs to DIRECTV that the Massanutten account was being under billed.

Pls.' Supp. Resp., Dkt. # 105, at ¶¶ 2.g, 2.h. These paragraphs illustrate the inherent absurdity of plaintiffs' argument. In one breath, plaintiffs assert that the "Affiliate Agreement is not applicable at all to this case." Id. at ¶ 2.g. In the next breath, plaintiffs state "Sky Cable's commissions are a result of the . . . Affiliate Agreement." Id. at ¶ 2.h. These contentions are mutually exclusive. Plaintiffs cannot argue that they are entitled to commissions under the Affiliate Agreement while denying that this Agreement, and its arbitration provision, applies to their claim for commissions lost on DIRECTV programming at Massanutten. Indeed, plaintiffs fail to explain how they were able to assume assignment of the Massanutten account as a DIRECTV affiliate, and how they are entitled to the commissions generated by that account, if not by virtue of this Affiliate Agreement. No other contract and no other basis for the claimed entitlement to the commissions lost on the Massanutten programming exists in this case.

As plainly set forth in Recital C to the Affiliate Agreement, the purpose of that Agreement is to define the relationship between DIRECTV and Sky Cable:

> C. DIRECTV and affiliate desire to establish a business relationship whereby Affiliate will promote and implement the delivery of DIRECTV programming to certain of Affiliate's commercial customers. Pursuant to this Agreement, Affiliate will act as a commissioned sales representative of DIRECTV to solicit and take orders for certain DIRECTV programming from Commercial Establishment (as defined below).

Ex. 1 to Jamnback Decl., Dkt. # 65, at C. In addition to providing for the ordering, installation and delivery of DIRECTV programming, the Affiliate Agreement also provides that the affiliate will be responsible for billing and collection activities related to the delivery of DIRECTV services, id. at ¶ 2.4(a); calculating and collecting copyright royalty fees required to be paid by each Affiliate Property, id. at ¶ 2.12; and providing customer service to Affiliate Properties, id. at ¶ 2.10. Plaintiffs allege in the amended complaint that Sky Cable was authorized "to handle all servicing for those establishments to which it had sold said services **and for those establishments which were assigned to it by DIRECTV for servicing**," such as the Massanutten account. Am. Compl., Dkt. # 59, at ¶ 6 (emphasis added). Thus, the court finds that the Affiliate Agreement forms the basis for the affiliate relationship between Sky Cable and DIRECTV.

Finally, this conclusion is supported by plaintiffs' own (previous) arguments on brief. In their response to the instant motion to dismiss or transfer to arbitration, plaintiffs argue that DIRECTV violated section 2.11 of the Affiliate Agreement. Resp. to Mot. to Dismiss and Mot. to Arbitrate, Dkt. # 71, at ¶ 1. Section 2.11 prohibits the affiliate from retransmitting or rebroadcasting DIRECTV programming. Plaintiffs contend this provision contains an implicit "obligation on DIRECTV to investigate the complaints of illegal transmission of its signal . . . ."

Id. at ¶ 4. This provision, plaintiffs argue, gives rise to their breach of contract claim against DIRECTV. Having relied on the Affiliate Agreement in their first brief in response to DIRECTV's motion to dismiss, plaintiffs cannot now suggest that it has no application to this dispute.

**B.**

The FAA requires courts to stay proceedings and compel arbitration when the parties have entered into a valid and enforceable agreement to arbitrate and the dispute at issue falls within the scope of that agreement. Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 301 (4th Cir. 2002) (citing 9 U.S.C. §§ 3-4). Sky Cable alleges in the amended complaint that that DIRECTV violated its duty to investigate the alleged fraud perpetrated by Randy Coley. As such, plaintiffs claim that DIRECTV is liable for negligence and breach of contract. The arbitration clause of the Affiliate Agreement encompasses "[a]ny dispute or disagreement arising between DIRECTV and Affiliate." Ex. 1 to Jamnback Decl., Dkt. # 65, at ¶ 9. Plaintiffs' claim that DIRECTV failed to investigate their suspicions of stolen programming plainly falls within the contours of the parties' agreement to arbitrate.

Plaintiffs do not take issue with the validity of the arbitration provision and offer no reason why this provision of the contract should not be enforced. They do not contend there are contractual formation defects, that the agreement is unconscionable, or that there are other grounds for revocation of the contract. See Murray, 289 F.3d at 301. Rather, plaintiffs argue that "this case is not ripe at this point for arbitration" as it depends on resolution of the claims against the Coleys. Pls.' Resp. to Mot. to Dismiss and Mot. to Arbitrate, Dkt. # 71, at 2 ¶ 8. The court disagrees. Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an

> agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The court is satisfied that the dispute between DIRECTV and Sky Cable, i.e., whether DIRECTV has any obligation to pay plaintiffs commission on cable programming allegedly stolen by the Coleys, is subject to arbitration pursuant to the terms of the parties' contract. The fact that the liability of the Coleys, if any, will be resolved in this case poses no impediment to a determination by the arbitrator as to plaintiffs' claims against DIRECTV. Whether DIRECTV owed a duty to Sky Cable to investigate claims of cable programming theft at Massanutten, and, if such duty existed, whether DIRECTV breached that duty, are issues that need to be resolved, whether in this court or at arbitration. As the parties clearly chose to resolve this dispute at arbitration, the court is required to accede to their request and allow the parties to arbitrate this issue.

## C.

DIRECTV argues venue in this district is improper because the parties have agreed to resolve this dispute in Los Angeles, California, and it asserts the court should transfer this matter to the Central District of California where the district court can enforce the arbitration clause. "[C]ourts have taken three different approaches in deciding whether a federal district court may compel arbitration when the challenged arbitration agreement states that the arbitration itself shall occur in another district." Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co., Inc., 628 F. Supp. 2d 674, 682 (E.D. Va. 2009). One approach is to find that a district court can compel arbitration in the specified district, even if it is different than the one in which the

petition to compel arbitration is filed. Id. (citing Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co., 524 F.2d 1275, 1276, 1278 (5th Cir. 1975)). The second approach "permits a district court to compel arbitration in its own district and to ignore the forum specified in the arbitration clause. . . ." Id. (citing Textile Unlimited, Inc. v. A.. BMH & Co., 240 F.3d 781 (9th Cir. 2001)). The third approach, which has been followed by a majority of courts to consider the issue, holds that "'a district court lacks authority to compel arbitration in other districts, or in its own district, if another [district] has been specified for arbitration.'" Id. at 683 (alteration in original) (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 327 (7th Cir. 1995)). Such courts have found that any other result renders section 4 of the FAA meaningless. Id.

Noting the Fourth Circuit has yet to decide the issue but has implied it would align itself with the majority, the court in American International Specialty Lines found the "well-reasoned majority position" to be highly persuasive. 628 F. Supp. 2d at 683; see also Sykes v. CBS Radio, Inc., No. 8:11-cv-02178-AW, 2011 WL 5455924, at *5 (D. Md. Nov. 9, 2011) ("The emerging position within the Fourth Circuit is that the Federal Arbitration Act does not permit district courts to compel arbitration in other jurisdictions."); Wake Cnty. Bd. of Educ. v. Dow Roofing Sys., LLC, 792 F. Supp. 2d 897, 904 (E.D.N.C. 2011) (holding court cannot compel arbitration in another district and dismissing case without prejudice so the parties can arbitrate). The court agrees and finds venue in this district to be improper. Therefore, the court must either dismiss without prejudice or transfer plaintiffs' claim against DIRECTV to the Central District of California where venue is proper. "This decision is left to the Court's discretion." Am. Int'l Specialty Lines, 628 F. Supp. 2d at 685.

11

Because venue is proper for the majority of the claims raised in plaintiffs' amended complaint against other defendants, the court believes that it is prudent to dismiss plaintiffs' claims against DIRECTV without prejudice so that DIRECTV and Sky Cable may arbitrate those claims in Los Angeles.[5] See Skyes, 2011 WL 5455924, at *5 ("Courts within the Fourth Circuit have granted dismissal in similar cases." (citing Wake Cnty., 792 F. Supp. 2d at 904)); Wake Cnty., 792 F. Supp. 2d at 904 (dismissing case without prejudice so parties can arbitrate in another district); see also Continental Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727 (7th Cir. 2005) (finding district court properly dismissed action because FAA forbids a court to compel arbitration outside the confines of the district); cf. Independence Receivables Corp. v. Precision Recovery Analytics, Inc., 754 F. Supp. 2d 782, 786-87 (D. Md. 2010) (finding transfer pursuant to 28 U.S.C. § 1404(a) was appropriate where forum would be more convenient for both the arbitrable claims and for the remainder of the case).

Defendant Randy Coley urges the court to stay the non-arbitrable claims raised against him and Kimberli Coley until plaintiffs' claims against DIRECTV have been arbitrated. "The decision to stay litigation of non-arbitrable claims or issues pending the resolution of related arbitration proceedings 'is a matter largely within the district court's discretion to control its docket.'" C.B. Fleet, 743 F. Supp. 2d at 589 (quoting Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 97 (4th Cir. 1996)). There is no reason to stay the claims against the Coleys pending the arbitration between DIRECTV and plaintiffs, as the claims against the Coleys are not dependent upon the outcome of the arbitration.

---

[5] While plaintiffs and counsel for Randy Coley raised vague arguments at the March 7th hearing about potential statute of limitations issues that may arise if the court dismisses plaintiffs' claim against DIRECTV, there has been no evidence of any prejudice that might befall plaintiffs should the court dismiss the claim without prejudice rather than transfer it to the Central District of California.

## III.

**Kimberli Coley's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 75)**

Defendant Kimberli Coley asserts the court lacks personal jurisdiction over her and moves to dismiss the amended complaint. She argues that she is a stay-at-home mother and has no involvement whatsoever in her husband's business dealings. She asserts on brief and in her declaration that she does not conduct business in the Commonwealth of Virginia, does not own assets or property in Virginia, and has not spent time in Virginia for more than twenty years. Decl. in Support of Kimberli Coley's Mot. to Dismiss, Dkt. # 77, at ¶¶ 5-7. With respect to the bank account plaintiffs allege she opened in her name into which proceeds from this allegedly fraudulent scheme were deposited, Kimberli Coley asserts that she intended to open a business account as a favor for her husband and did not know the account was opened in her name. For their part, plaintiffs argue that Kimberli Coley should not be dismissed from this case simply because she stated under oath that the allegations raised against her are not true. Plaintiffs acknowledged at the March 7th hearing that without having taken discovery, they are unclear about the nature and extent of Kimberli Coley's involvement in her husband's business ventures. However, the information they have at this point in the litigation, specifically with respect to the bank account opened by with Kimberli Coley, suggests to plaintiffs that she may have been complicit in this alleged scheme.

As stated at the March 7th hearing, the court finds a period of jurisdictional discovery to be appropriate in this case. As such, the court will deny Kimberli Coley's motion to dismiss for lack of personal jurisdiction, without prejudice, at this time. Plaintiffs are permitted to take discovery for a period of sixty (60) days on the issue of Kimberli Coley's role in this case.

Kimberli Coley will be permitted to re-file her motion to dismiss after the conclusion of this discovery period.

## IV.

### Randy Coley's Motion to Stay or, in the Alternative, to Dismiss for Failure to Join Necessary Party (Dkt. # 78)

Finally, defendant Randy Coley moves to stay this matter pursuant to Federal Rule of Civil Procedure 19, or in the alternative, to dismiss the amended complaint and cross-claim pursuant to Rule 12(b)(7), for failure to join a necessary party. Randy Coley asserts that the entity East Coast Cablevision, LLC, of which he is sole member and manager, is a necessary and indispensable party to this litigation. Because East Coast Cablevision, LLC has filed for bankruptcy and the automatic stay remains in effect, Randy Coley asks the court to stay this matter for forty-five (45) days and schedule a status conference thereafter to determine how to proceed given the status of the bankruptcy proceeding.

The court declines to delay this proceeding solely because of the bankruptcy of East Coast Cablevision, LLC. This case concerns allegations that Randy Coley fraudulently entered into a SMATV Agreement with DIRECTV two years before East Coast Cablevision, LLC was formed in 2001. Plaintiffs claim Randy Coley "played fast and loose with his entities and business practices," Pls.' Resp. and Mem. in Opp. to Mot. to Stay, Dkt. # 89, at 3, and that he operated prior to 2001 using a variety of trade names.

It may well be that East Coast Cablevision, LLC is a joint tortfeasor in this action. But it is well settled that Rule 19 does not require the mandatory joinder of joint tortfeasors and co-conspirators. See Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."). The court does not believe that East Coast Cablevision, LLC is a necessary and indispensable

party to this action and declines to stay this matter in light of its ongoing bankruptcy proceedings.

## V.

For these reasons, DIRECTV's Motion to Dismiss for Failure to State a Claim, or, in the Alternative, to Transfer for Binding Arbitration (Dkt. # 65) is **GRANTED** and Count 11 of the amended complaint is **DISMISSED without prejudice** so the parties can arbitrate in Los Angeles; defendant Kimberli Coley's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 75) is **DENIED without prejudice** at this time to allow plaintiffs to commence a sixty-day period of jurisdictional discovery; and defendant Randy Coley's Motion to Stay or, in the Alternative, to Dismiss for Failure to Join Necessary Party (Dkt. # 78) is **DENIED**.

An appropriate Order will be entered.

Entered: March 23, 2012

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge