UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| Sky Cable, LLC, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.: 5:11-cv-00048-MFU |
| ) | |
| Randy Coley, et al. ) | |
| ) | |
| Defendants. ) | |

**CROSS-CLAIM PLAINTIFF DIRECTV, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT FOR STATUTORY DAMAGES AGAINST DEFENDANTS RANDY COLEY AND EAST COAST CABLEVISION, LLC**

Cross-Claim Plaintiff DIRECTV, LLC ("DIRECTV") respectfully submits this Memorandum in Support of its Motion for Summary Judgment for Statutory Damages against Defendants Randy Coley and his company East Coast Cablevision, LLC ("the Coley Defendants"). The Coley Defendants have already been found liable as to the First Cause of Action in DIRECTV's Amended Cross-claim for violations of the Communications Act, 47 U.S.C. § 605(a), and the Court has entered an injunction against them enjoining further violations. Based on the finding of liability and the uncontested evidence, DIRECTV now moves for summary judgment against the Coley Defendants for an award of statutory damages on its claim under the Communications Act.

### I. INTRODUCTION

This Court's Order dated July 11, 2013 (Dkt. # 204) granted DIRECTV's Motion in part, finding that the Coley Defendants were liable to DIRECTV for violations of 47 U.S.C. § 605(a),

1

and entered a permanent injunction against the Coley Defendants enjoining further unauthorized use of DIRECTV equipment and programming.

The remaining issue regarding DIRECTV's 47 U.S.C. § 605(a) claim pertains to the amount of damages DIRECTV is entitled to for the Coley Defendants' violations. The Communications Act provides that for violations of § 605(a), the aggrieved party is entitled to elect between (1) "actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages," or (2) statutory damages in "a sum not less than $1,000 or more than $10,000" per violation. *See* 47 U.S. § 605(e)(3)(C)(i). The statute also provides with regard to statutory damages that "[i]n any case in which the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." *See* 47 U.S.C. § 605(e)(3)(C)(ii).

In its Memorandum Opinion, the Court declined to enter summary judgment for damages against the Coley Defendants for the Communications Act violations based on DIRECTV's alternative damages theories set forth in its Motion, on the grounds that there were contested issues of fact, particularly with regard to actual damages, concerning the period of time that DIRECTV was entitled to recover for. See Memorandum Opinion at 54 - 57. Specifically, the Court noted that the Coley Defendants had argued that DIRECTV could only recover damages for underpayments for the two year period immediately prior to filing the Complaint. Coley Defendants' Summary Judgment Brief (Dkt. #164) at 21.

However, the Court's holding in this regard, and the Coley Defendants' argument potentially limiting DIRECTV's claim for underpayments is inapplicable to DIRECTV's claim for <u>statutory damages</u> based on violations of the Communications Act occurring <u>within</u> this two year period. As the Court recognized, "[a]t the very least, Randy Coley and East Coast are

2

subject to injunctive relief <u>and are liable for damages stemming from § 605 violations that occurred two years prior to the date DIRECTV filed suit</u>." Memorandum Opinion at 54 (emphasis added).

Accordingly, DIRECTV elects to recover statutory damages rather than actual damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), and now seeks statutory damages for the § 605(a) violations that occurred within the two years prior to the date of the Complaint, which in fact encompass the apex of the Coley Defendants' illegal scheme. Further, for purposes of this Motion, DIRECTV will forgo its right to request the Court to consider an award of enhanced damages for willful conduct pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Because the Court has already determined that the Coley Defendants violated the Communications Act and are liable for damages for at least this two year period, and there are no issues of material fact in dispute with regard to the statutory damage calculation, summary judgment on the issue of the amount of statutory damages is appropriate. DIRECTV respectfully requests that the Court enter an award of statutory damages against the Coley Defendants and in favor of DIRECTV as set forth below.

## II. STATEMENT OF FACTS

An extensive background and statement of facts relevant to this motion are fully set forth in DIRECTV's Motion for Partial Summary Judgment against the Coley Defendants (Dkt. #166), and DIRECTV's Reply Memorandum (Dkt. # 185), which are incorporated herein by reference. DIRECTV will not repeat those facts here, but will provide a brief summary of the essential and uncontested facts pertinent to the issue of damages.

Defendant Randy Coley is the sole member manager of Defendant East Coast Cablevision, LLC. East Coast Cablevision, LLC is a Delaware limited liability company based in Fuquay Varina, North Carolina, and uses the dbas East Coast Cablevision, East Coast Cable Resort, Resort Cable LLC, and Resort Cable. The Coley Defendants were in the business of delivering television programming obtained from programming providers such as DIRECTV to the residents and occupants of various commercial properties.

Massanutten, one of the properties serviced by the Coley Defendants, is a full service mountain resort that includes hotels, condominiums and other services and facilities owned and/or operated by Great Eastern Resort Management, Inc. ("GERM"). Also located within Massanutten is a timeshare condominium complex at 4082 Peak Drive that is managed by the Mountainside Villas Owners Association ("MVOA"), and numerous single family homes that are independently owned, but managed by the Massanutten Properties Owners Association ("MPOA"). Massanutten includes dining and recreational facilities such as bars, restaurants, golf courses and clubhouses, health clubs, a ski area and a water park.

Beginning in June 1999 and continuing to mid-2011, the Coley Defendants improperly used a fraudulently obtained DIRECTV SMATV account to provide DIRECTV satellite television programming to a variety of buildings and establishments in Massanutten. For over twelve years, the Coley Defendants falsely certified the number of subscriber units associated with the Massanutten Resort DIRECTV account they had established for the improper purpose of obtaining DIRECTV television programming for a small fraction of the value of that programming. Defendants redistributed and resold the DIRECTV programming through an illegal and unauthorized cable system, eventually to the over 2,500 GERM, MVOA and MPOA viewers, for a substantial illicit profit.

As of June 2011, the Coley Defendants were rebroadcasting DIRECTV satellite programming at Massanutten to at least 2,353 GERM units, at least 168 MVOA units, and no fewer than 40 MPOA houses while still paying for only 168 units. Jamnback Decl. Ex. 1, pp. 226 – 227, Jamnback Decl. Ex. 6, No. 18.[1] At that time, the Coley Defendants were receiving monthly payments from GERM of approximately $37,648.00 based on the viewer unit count of 2,353. Jamnback Decl. Ex. 7, No. 19; Jamnback Decl. Ex. 6, Nos. 28, 29 & 30. The Coley Defendants were also continuing to receive an additional $2,800 per month from MVOA for

---

[1] All references in this Memorandum to the Jamnback Declaration and the Waite Declaration, and any exhibits thereto, refer to the declarations submitted in support of DIRECTV's previously filed Memorandum in Support of Motion for Partial Summary Judgment (Dkt. #'s 166, and 166-1 through 166-18)

4

service to the time share units. Jamnback Decl. Ex. 6, Nos. 23 & 24, Jamnback Decl. Ex. 10, No. 10. Finally, the Coley Defendants were receiving an unknown amount of monthly payment from at least 40[2] MPOA households, which were individually paying the Coley Defendants directly. Jamnback Decl. Ex. 1, p. 200, l. 9 – p. 201, l. 25; Jamnback Decl. Ex. 6, No. 27. At the same time, the Coley Defendants were paying DIRECTV monthly payments of approximately $2,077.99, based on the falsified unit count of 168. Jamnback Decl. Ex. 6, Nos. 31 & 32. Accordingly, on an annual basis, Coley was billing the GERM and MVOA $485,376.00 for DIRECTV programming, but paying DIRECTV only $24,935.88, for an illicit annual profit of $460,440.12.[3] Jamnback Decl. Ex. 6, Nos. 17 – 35.

### III. ARGUMENT

**A.     Summary Judgment Standards**

Summary judgment should be granted if the pleadings, discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party is entitled to summary judgment "where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Although courts view the evidence in the light most favorable to the non-moving party, "the mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Id.* at 1221, citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Conclusory allegations or unsupported speculation, without more, are insufficient to preclude the

---

[2] The Coley Defendants admit to at least 40 MPOA households, although the limited records produced after the close of discovery and summary judgment briefing as a result of the Court's December 20, 2012 Order (Dkt. # 190) on DIRECTV's Motion to Compel show over 100 households. For purposes of the instant Motion, DIRECTV will use the admitted number of at least 40 MPOA households.

[3] This figure does not include the additional illicit sums that the Coley Defendants collected from the at least 40 MPOA households for DIRECTV programming provided using the same illegal system.

granting of a summary judgment motion. *See Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987).

The propriety of resolving cases on summary judgment is unquestioned, and this principle is applicable to both liability and damages. Numerous courts have recognized that a court may determine statutory damages on summary judgment, so long as the parties have been afforded proper notice and an opportunity to submit their evidence on the underlying facts germane to the award, and such evidence gives the court a sufficient factual basis upon which to make its decision. *See, e.g.*, *Cable/Home Communication Corp. v. Network Prods., Inc.,* 902 F.2d 829, 853 (11th Cir. 1990); *Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.,* 725 F.2d 1, 2-3 & n.2 (1st Cir. 1983); *Broadcast Music, Inc. v. Entm't Complex, Inc.,* 198 F. Supp. 2d 1291, 1293-94 (N.D. Ala. 2002); *Blue Seas Music, Inc. v. Fitness Surveys, Inc.,* 831 F. Supp. 863, 866 (N.D. Ga. 1993).

The Coley Defendants did not submit any facts or evidence to contest the overwhelming evidence concerning both actual and statutory damages in response to DIRECTV's original Memorandum in Support of its Motion for Partial Summary Judgment (Dkt. # 166). The scope and duration of the fraudulent scheme, the number of subscribers, the payments the Coley Defendants received, and the amounts they paid to DIRECTV, and DIRECTV's standing to pursue damage have all been established by the previously submitted record. Given DIRECTV's election of non-willful statutory damages for the two year period preceding the filing of the Complaint, all that remains is for the Court to determine the appropriate amount of statutory damages based on the uncontested evidence.

**B.     Statutory Damages for Violations of 47 U.S.C. § 605(a)**

For violations of § 605(a), the aggrieved party is entitled to elect between (1) "actual damages suffered by him as a result of the violation and any profits[4] of the violator that are

---

[4] Notably, the statute provides for the disgorgement of the violator's profits *in addition to* the aggrieved party's actual damages. Were this matter to proceed to trial, DIRECTV would be entitled to seek to recover both the value of its programming losses and other actual damages *and* disgorgement of the Coley Defendants' profits.

6

attributable to the violation which are not taken into account in computing the actual damages," or (2) statutory damages in "a sum not less than $1,000 or more than $10,000" per violation. *See* 47 U.S. § 605(e)(3)(C)(i). The award of statutory damages and the amount of the award under Section 605(e)(3) is committed to the Court's discretion. *See DIRECTV, Inc. v. Ferri*, 2009 WL 4406052, *3-4 (W.D.N.C. 2009) (*citing DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 330 n. 8 (4th Cir. 2008)); *DIRECTV v. Haskell,* 344 F.Supp.2d 761, 763-64 (D. Me. 2004); *DIRECTV, Inc. v. Montes,* 338 F.Supp.2d 352, 355 (D. Conn. 2004). *See also DIRECTV, Inc. v. Yancey*, 2005 WL 3435030, *3 (W.D. Va. 2005). This Court in *Yancey* noted:

> As regards statutory damages, the Communications Act provides for damages "at a sum not less than $1,000 or more than $10,000, as the court considers just." Under the wide discretion accorded courts under this provision, various courts have awarded amounts both at the maximum, *see, e.g., DirecTV, Inc. v. Mullins,* No. 1:03cv112 (W.D. Va. Mar. 3, 2004); *DirecTV, Inc. v. Best, et al.,* No. 03-50220, 2004 WL 547113 (N.D. Ill. Feb.26, 2004), and at the minimum statutory levels. *See, e.g., DirecTV, Inc. v. Albright,* No. 03-4603, 2003 U.S. Dist. LEXIS 23811 (E.D. Pa. Dec. 9, 2003); *DirecTV, Inc. v. Kaas, et al.,* 294 F.Supp.2d 1044 (N.D. Iowa 2003).

*DIRECTV, Inc. v. Yancey*, 2005 WL 3435030,*3 (W.D. Va. 2005).

For similar violations of the Wiretap Act, 18 U.S.C. § 2511, the Fourth Circuit has advised district courts to consider the following factors when exercising their discretion to award statutory damages: (1) the severity of the violation, (2) the degree of harm to the victim, (3) the relative financial burdens of the parties, and (4) the purposes to be served by imposing the statutory damages amount. *Rawlins,* 523 F.3d at 327.[5] Courts in other jurisdictions have used similar factors regarding statutory damage awards pursuant to 42 U.S.C. § 605. In determining statutory damages under § 605(e)(3), such courts have used various methods to calculate "just

---

[5] The *Rawlins* Court stated: "While *Nalley* (referencing *Nalley v. Nalley,* 53 F.3d 649 (4th Cir. 1995)) may be read as merely alluding to these non-exclusive factors, we find them to provide a useful framework for exploring the equities at stake in a court's exercise of discretion, and we therefore adopt them here." *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 326, n.8 (4th Cir. 2008).

damages," including assessing the maximum statutory rate; estimating the amount of services the defendant pirated and applying a multiplier to that figure; adopting the plaintiff's estimate of the amount of services pirated; and, where there is no evidence of actual usage or commercial advantage, applying the statutory minimum for each pirated device. *See DirecTV v. Haskell,* 344 F.Supp.2d 761, 764 (D. Me. 2004); *DIRECTV, Inc. v. Montes,* 338 F.Supp.2d 352, 355 (D. Conn. 2004). In sum, " '[i]n its broad discretion for determining statutory damages, the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed.' " *Haskell,* 344 F.Supp.2d at 764 (quoting *Cable/Home Communication Corp. v. Network Prods., Inc.,* 902 F.2d 829, 852 (11th Cir.1990)). "The specific amount of statutory damages assessed pursuant to § 605 rests within the sound discretion of the court." *DIRECTV, Inc. v. Walsh*, 540 F.Supp.2d 553, 560 (M.D. Pa. 2008); *Haskell,* 344 F.Supp.2d at 763–64.

C.      **Evidence Supporting DIRECTV's Statutory Damages Claim**

As noted *supra*, the Court has already determined that for a period up to and including June 2011, the Coley Defendants were illegally distributing DIRECTV programming to more than 2,500 subscribers.

> The evidence makes clear that from at least 2004 through June 2011, the Coley Defendants received DIRECTV programming signals authorized for 168 units at Mountainside Villas and distributed those signals to more than 2,500 properties the Coley defendants serviced at Massanutten Resort without proper authority from, or payment to, DIRECTV.

 Memorandum Opinion at 38.

The Court further found as follows:

> Coley admits that he reported to DIRECTV that 168 subscriber units at Massanutten would have access to DIRECTV programming, that he never paid DIRECTV for more than the 168 subscriber units originally reported, and that as of May 2011 he was providing DIRECTV programming to 2,353 subscriber units managed by GERM, among other areas of Massanutten, using programming obtained from the Massanutten DIRECTV SMATV account. The subscriber unit count on the Massanutten SMATV account remained at 168 units from 1999 through June 2011.

*Id*. (citations to the record omitted).

The Court also specifically addressed the issue the Coley Defendants raised concerning the potential operation of the statute of limitations to DIRECTV's claim for damages:

> The fact that a jury might find DIRECTV had knowledge of the § 605 violations as far back as 2001 does not shield Randy Coley and East Coast from liability for violations committed during the limitations period. *See Lyons P'ship*, 243 F.3d at 797. At the very least, Randy Coley and East Coast are subject to injunctive relief and are liable for damages stemming from § 605 violations that occurred two years prior to the date DIRECTV filed suit. *See* Coley Defs.' Summ. J. Br., Dkt. # 164, at 21 (arguing "DIRECTV may not recover for any underpayments in violation of [§ 605] that occurred more than two years prior to the dates it filed suit against the various Coley Defendants.").
>
> Memorandum Opinion at 54.

For purposes of this Motion, the potential jury issue identified by the Court, and the Coley Defendants argument to the effect that DIRECTV may not recover actual damages for underpayments for the period of time ending two years before the lawsuit was filed, are not relevant.  DIRECTV seeks statutory damages based on the number of established violations occurring within the two-year period prior to the filing of its claims. This number has already been established by the Court in its Memorandum, and further grounded in the Coley Defendants' Responses to DIRECTV's Requests for Admissions:

**RFA 28:** Admit that as of May 2011, you were providing television programming to 2,353 subscriber units managed by GERM at the Massanutten Resort using programming obtained from the Massanutten DIRECTV SMATV account No. 08810346.

**Response**:  Admitted that East Coast was doing so as of May 2011.

Jamnback Decl. Ex. 6, No. 28.[6]

---

[6] *See also* Jamnback Decl. Ex. 7, No. 19; Jamnback Decl. Ex. 6, Nos. 29 & 30; Jamnback Decl. Ex. 9, p. 208, l. 14 – 25; Jamnback Decl. Ex.1, p. 227, l. 5-20.

**RFA 25**: Admit that as of May 2011, you were providing television programming to no fewer than 40 MPOA homes using programming obtained from the Massanutten DIRECTV SMATV account No. 08810346.

**Response**: Admitted that East Coast was doing so.

Jamnback Decl. Ex. 6, No. 25.

**RFA 23**: Admit that as of May 2011, you were providing television programming to no fewer than 168 MVO subscriber units using programming obtained from the Massanutten DIRECTV SMATV account No. 08810346.

**Response**: Admitted that East Coast was doing so as of May 2011.

Jamnback Decl. Ex. 6, No. 23.

In addition to these admissions, additional uncontested evidence of these facts is found in Randy Coley's deposition testimony and responses to Sky Cable's written discovery. *See generally* DIRECTV's Summary Judgment Memorandum (Dkt. # 166) at 13, and references to the record cited therein. It should also be noted that during the operative period, the Coley Defendants were also rebroadcasting DIRECTV programming to an unknown number of bars, restaurants, lobbies, and golf clubs. Jamnback Decl. Ex. 1, p. 200, l. 9 – p. 201, l. 25, p. 234, l. 9 – p. 238 l. 5.[7]

Between the Court's findings in the Memorandum Opinion, and the Coley Defendants' admissions, every material fact necessary to support an award of statutory damages has been established, and there is no basis for either further evidentiary submissions and hearings, or a trial, before the Court may properly award statutory damages on summary judgment.

---

[7] DIRECTV's investigation revealed that DIRECTV programming was being provided by Coley's private cable system to numerous unauthorized locations around the Resort, including a deli & pizzeria, bar/lounges, gymnasiums, lobbies, snack shop, golf shop, recreation center, and the check-in building for the Massanutten Resort. Waite Decl. ¶ 30. These commercial facilities are not authorized to receive DIRECTV programming pursuant to the Resort's SMATV Viewing Agreement. Waite Decl. ¶ 31. DIRECTV has not been able to accurately quantify the number of televisions or the period of time the Coley Defendants were illegally supplying DIRECTV programming in these commercial establishments through discovery, and has not included them in its request for statutory damages in this Motion.

### D.     DIRECTV's Requested Statutory Damages and Other Relief

Using the Fourth Circuit's general guidelines from the *Rawlins* decision, the uncontested evidence in this case with regard to each of the applicable factors dictate an award of statutory damages in the higher end of the discretionary range.

#### 1.     The Severity of the Coley Defendants' Violations

Beginning in June 1999 and continuing to mid-2011, the Coley Defendants improperly used a fraudulently obtained DIRECTV SMATV account to provide DIRECTV satellite television programming to a variety of buildings and establishments in Massanutten. As set forth in detail *supra*, this SMATV account was initially set up by the Coley Defendants using false and inaccurate information for a non-existent hotel, and then eventually expanded to provide DIRECTV programming to over 2,500 viewing units all over the Massanutten area. These viewers paid monthly fees to the Coley Defendants, while the Coley Defendants disclosed, and paid DIRECTV for, only 168 subscriber units. Each of these 2,561 units, including the reported 168 subscriber units that the Coley Defendants were actually paying for,[8] were receiving DIRECTV programming illegally within two years of the filing of the Complaint. This fraud-based margin permitted the Coley Defendants to earn approximately $4 million in illicit profits over the scheme's twelve-year run.

#### 2.     Harm to DIRECTV Caused by the Coley Defendants

Between July 1999 and July 2011, GERM has paid the Coley Defendants approximately $3,641,711.61, and MVOA paid them an additional $403,200. Jamnback Decl. Ex. 6, Nos. 17 – 35; Jamnback Decl. Ex. 7, No. 19; Jamnback Decl. Ex. 10, No. 10. For the same time period,

---

[8] See generally DIRECTV's Summary Judgment Memorandum (Dkt. # 166) at 8 – 11. The SMATV account set up for a 168 unit "hotel" based on the Coley Defendants' application was in itself fraudulent. The property address listed for the account and identified by the Coley Defendants as a hotel at 289 Ranier Road, is not a hotel, but rather is a house that was temporarily rented by the Coley Defendants, used for business operations and as employee housing. Jamnback Decl. Ex. 1, p. 145, l. 5 – p. 146, l. 25; Jamnback Decl. Ex. 6, No.13; Waite Decl. ¶ 29.  In addition, the head end containing the DIRECTV receiving equipment was not located at the listed address, but rather in another building in the Massanutten complex located at 4000 Killy Court. Jamnback Decl. Ex. 1,  p. 148, l. 1-6; Jamnback Decl. Ex. 7, No. 7; Waite Decl. ¶ 33.

11

Coley paid DIRECTV $232,745.19. Waite Decl. ¶ 35, Ex. E. Thus, the simple "net" actual damages are **$3,812,166.42**.[9]

In addition to the specific damages set forth above, DIRECTV suffered damage in other important ways, albeit in ways that are more difficult to specifically quantify. First, DIRECTV has had to invest substantial amounts of money and resources in investigating and litigating fraud of the types engaged in by the Coley Defendants. Second, fraudulent actions by persons like the defendants cause damage to the goodwill associated with DIRECTV's name and its reputation in the marketplace, and damage the business relationships and good reputation that DIRECTV has developed over many years with its content providers. These losses are substantial and real, but difficult to calculate in terms of actual damages.

Thus, the actual damages calculation above based on the Coley Defendants' illicit profits does not fully encompass the total harm to DIRECTV. It is precisely because total actual damages in this type of action are often difficult to measure with precision that Congress provided for the imposition of statutory damages at the election of the aggrieved party.

### 3. Financial Burden

The Coley Defendants were not a small time operation that somehow innocently or unintentionally connected a few extra televisions to an otherwise lawful system without paying the proper rates. They set up, ran, and actively concealed, an operation at a very large resort that ultimately provided illegal, and from DIRECTV's perspective, unpaid DIRECTV programming for over 2,500 subscriber units for over 12 years, and made gross profits of around $4 million. The Coley Defendants have not introduced any tax returns showing their taxable income and expenses from this illegal operation because they did not file tax returns. The Coley Defendants have not introduced any evidence of mitigating factors relevant to either the amount of the illegal proceeds generated by their operation at Massanutten, or their financial status. Under these

---

[9] This figure does not include the additional payments that the Coley Defendants received from no less than 40 single family homes managed by MPOA that they also wired to illegally receive DIRECTV programming without notice or payment to DIRECTV, for an unknown period of time continuing through June 2011, or the payments received for the various commercial establishments at the Resort noted *supra*.

12

circumstances, the Court has no evidentiary basis to limit or reduce an award of statutory damages.

### 4. Purposes to Be Served by Awarding Statutory Damages

The Coley Defendants should not be permitted to realize <u>any</u> profits from their illegal enterprise. DIRECTV should be compensated for its financial losses for its programming, for the costs of its investigation, anti-piracy and legal efforts, and for the unquantifiable harm and damage to the goodwill associated with DIRECTV's name and its reputation in the marketplace caused by illegal operators like the Coley Defendants. Finally, the award should serve as a deterrent to the Coley Defendants and others with regard to the risks of engaging in illegal use of DIRECTV equipment and programming.

## E.  DIRECTV's Statutory Damages

By the most direct method of proving violations of the statute with uncontested evidence within the conceded two-year period, the total number of § 605(a) violations committed by the Coley Defendants is based on the self-reported *minimum* of 2,561 viewing units that the Coley Defendants illegally supplied with DIRECTV programming. Each such viewing unit was receiving unauthorized DIRECTV programming (albeit unknowingly). The Coley Defendants violated § 605(a) with regard to each viewing unit that it was providing with DIRECTV programming, since it is a violation of the statute to "assist in receiving" unauthorized programming. 47 U.S.C. § 605(a).

Thus, with regard to statutory damages, as of 2011, the Coley Defendants admit they were providing DIRECTV satellite television programming to 2,353 units for the GERM properties, at least 168 units for MVOA, and a minimum of 40 MPOA households for a total of 2,561 violations of the statute. That creates a range under sub-clause (II) of 47 U.S.C. 605(e)(3)(C)(i) of $2,561,000 (2,561 x $1,000) to $25,610,000 (2,561 x $10,000).

While the uncontested evidence clearly supports a finding that the violations "were committed willfully and for purposes of direct or indirect commercial advantage or private financial gain" pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which permits the Court in its discretion

13

to increase the award by $100,000 per violation, as noted *supra*, DIRECTV is not seeking enhanced damages based on the willful nature of the Coley Defendants' violations.[10] DIRECTV requests that the Court in its discretion award statutory damages within the range of $1,000 to $10,000 per violation, as the Court sees fit, based on the uncontested evidence in this case of 2,561 violations and other uncontested evidence in the record that the Court has already determined supports a finding of liability. Viewing this evidence in light of the *Rawlins* factors and other court decisions that provide guidance for the Court's exercise of its discretion, DIRECTV submits that an award in the high end of the range is appropriate.[11]

## IV. CONCLUSION

The uncontested facts demonstrate that DIRECTV is entitled to statutory damages based on no fewer than 2,561 violations of the Communications Act, 47 U.S.C. § 605(a), by the Coley Defendants within two years of the filing of the Complaint. DIRECTV respectfully requests that the Court enter an order awarding damages on summary judgment for the First Cause of Action in DIRECTV's Cross-Claim against Randy Coley and East Coast Cablevision, LLC, within the non-willful statutory range of $1,000 to $10,000 per violation for each of the 2,561 established violations, and permit DIRECTV to submit an application for its attorney's fees and costs.

---

[10] An award of enhanced damages could certainly be appropriate in consideration of the uncontested evidence of the deliberate and calculated nature of the Coley Defendants' fraud, its scope, its duration, and the amount of the illicit profits that the Coley Defendants realized through the scheme. *See Cable/Home Comm. Corp. v. Network Productions, Inc.*, 902 F.2d 829, 851-52 (11th Cir. 1990) (affirming award of enhanced statutory damages for defendant's "flagrant" violations of Section 605).

[11] In addition to monetary damages, Plaintiff DIRECTV also seeks to recover its reasonable attorneys' fees and costs from the Coley Defendants. Section 605(e)(3)(B)(iii) requires the defendants to pay the "full costs, including…reasonable attorneys' fees" incurred by Plaintiff DIRECTV in pursuing its claims. DIRECTV will submit its application for attorney's fees and costs pursuant to Fed.R.Civ.P. 54(d)(2) and consistent with 47 U.S.C. § 605(e)(3)(B)(iii).

Dated: August 16, 2013

        */s/ John H. Jamnback*
John H. Jamnback (VSB #27818)
Yarmuth Wilsdon PLLC
818 Stewart Street, Suite 1400
Seattle, WA 98101
Tel: (206) 516-3800
Fax: (206) 516-3888

Robert E. Travers, IV (VSB No. 66021)
Email: rtravers@williamsmullen.com
Williams Mullen, P.C.
222 Central Park Avenue, Ste. 1700
Virginia Beach, Virginia 23462
Tel: (757) 499-8800
Fax: (757) 473-0395
Attorneys for Defendant and Cross-Claimant
DIRECTV, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

| | |
|---|---|
| **Sherwin J. Jacobs** | Attorney(s) for Plaintiffs |
| **Paul G. Beers** <br> **Jeremy Carroll** | Attorney(s) for Defendants: Randy Coley and Kimberly Coley and East Coast Cablevision, LLC. |

I declare under penalty of perjury under the laws of United States that the foregoing is true and correct.

Dated this 16th day of August, 2013 at Seattle, Washington.

/s/ John H. Jamnback
John H. Jamnback (VSB #27818)
Yarmuth Wilsdon PLLC
818 Stewart Street, Suite 1400
Seattle, WA 98101
Tel: (206) 516-3800
Fax: (206) 516-3888

Attorneys for Defendant DIRECTV, LLC.