IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
NOV 07 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| SKY CABLE, LLC, et al., | ) |
| Plaintiffs, | ) Civil Action No. 5:11cv00048 |
| v. | ) |
| RANDY COLEY, et al., | ) By: Michael F. Urbanski |
| Defendants. | ) United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on the motion for partial summary judgment filed by cross-claim and third party plaintiff DIRECTV, LLC ("DIRECTV") against cross-claim defendant Randy Coley and third party defendant East Coast Cablevision, LLC ("the Coley defendants") (Dkt. # 209). DIRECTV seeks an award of statutory damages on its claim for violation of the Communications Act, 47 U.S.C. § 605(a).[1] The Coley defendants oppose the entry of summary judgment awarding statutory damages, principally arguing that they have a Seventh Amendment right to jury trial on the issue.

The court agrees that, as the case is presently postured, the Coley defendants have a right to a jury trial on the issue of the amount of statutory damages to be awarded to DIRECTV within the range of $1,000 to $10,000 per violation. At the same time, the issue of the number of violations of § 605(a) is not an issue to be resolved by the trier of fact, as it is a question of law for the court. As to this issue, the court concludes that the Coley defendants are liable for 2,393 violations. While the court has determined as a matter of law the number of § 605(a) violations,

---

[1] On July 11, 2013, the court granted summary judgment to DIRECTV against the Coley defendants on the § 605(a) claim. Subsequently, DIRECTV elected to forgo its claim for actual damages in favor of statutory damages under 47 U.S.C. §605(e)(3)(C)(i)(II).

a jury must determine what amount of statutory damages in the applicable range– between $1,000 and $10,000 per violation – is to be awarded DIRECTV against the Coley defendants.[2] As such, DIRECTV's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I.

This case arises out of the receipt and unauthorized distribution of DIRECTV satellite programming to thousands of viewers at Massanutten Resort, orchestrated by the Coley defendants. As detailed in a memorandum opinion entered on July 11, 2013, the court found that the Coley defendants violated 47 U.S.C. § 605(a), but concluded that disputed issues of material fact existed as to the extent of the actual damages claimed by DIRECTV.

The Communications Act provides that for violations of § 605(a), the aggrieved party is entitled to elect between (1) "actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages," or (2) statutory damages in "a sum not less than $1,000 or more than $10,000" per violation. See 47 U.S.C. § 605(e)(3)(C)(i). The statute also provides with regard to statutory damages that "[i]n any case in which the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." See 47 U.S.C. § 605(e)(3)(C)(ii).

In an effort to skirt all factual issues precluding an award of summary judgment, DIRECTV limits its damages claim in three respects. First, DIRECTV eschews any claim to

---

[2] Should DIRECTV choose to seek only the minimum amount of statutory damages—$1,000 per violation—there would be nothing left for a jury to decide, and summary judgment then would be appropriate. BMG Music v. Gonzalez, 430 F.3d 888, 892 (7th Cir. 2005).

2

actual damages, electing an award of statutory damages of between $1,000 and $10,000 per violation. Second, following the court's earlier summary judgment ruling, DIRECTV eliminates a factual issue by limiting its damages claim to the two year period prior to the date DIRECTV filed suit. Third, DIRECTV declines to pursue enhanced statutory damages for a willful violation under 47 U.S.C. § 605(e)(3)(C)(ii), thus eliminating any potential factual issue as to willfulness. DIRECTV claims these limitations leave no factual issue to be resolved as to damages.

The Coley defendants disagree, advancing three arguments in support of their position that summary judgment is not appropriate. First, they argue that they are entitled to have a jury determine the amount of statutory damages to be awarded. Second, they argue that they are potentially liable for only one § 605(a) violation. Third, they argue that if the court concludes that they are liable for multiple violations, the damages awarded should reflect DIRECTV's actual losses and be at the low end of the statutory range. The first and third arguments raised by the Coley defendants concern the issue of the range of statutory damages to be awarded for each violation; the second argument concerns the number of violations. The court will first address the issues surrounding the statutory range of damages per violation before turning to the issue of the number of violations.

## II.

The Coley defendants first argue that summary judgment is inappropriate because they have a constitutional right to a jury trial on DIRECTV's claim for statutory damages, relying principally the United States Supreme Court's decision in <u>Feltner v. Columbia Pictures Television, Inc.</u>, 523 U.S. 340 (1998). In <u>Feltner</u>, the Court held that a Copyright Act litigant has a right to a jury trial under the Seventh Amendment, "which includes a right to a jury

3

determination of the amount of statutory damages." Id. at 342. Columbia Pictures sued Feltner under the Copyright Act for unauthorized broadcasting of several of its copyrighted television shows. The district court declined Feltner's request for a jury trial on the issue of statutory damages, instead conducting a bench trial. The Supreme Court's opinion summarized the proceedings at the district court as follows:

> After two days of trial, the trial judge held that each episode of each series constituted a separate work and that the airing of the same episode by different stations controlled by Feltner constituted separate violations; accordingly the trial judge determined that there had been a total of 440 acts of infringement. The trial judge further found that Feltner's infringement was willful and fixed statutory damages at $20,000 per act of infringement. Applying that amount to the number of acts of infringement, the trial judge determined that Columbia was entitled to $8,800,000 in statutory damages, plus costs and attorney's fees.

523 U.S. at 344. The Ninth Circuit Court of Appeals affirmed the district court's rejection of Feltner's request for a jury determination of statutory damages. The Supreme Court reversed, concluding that the Seventh Amendment entitled Feltner "to a jury determination of the amount of statutory damages."[3]

In so holding, the Court first considered whether the Copyright Act provided for a right to jury trial on the issue of statutory damages, concluding that it did not. In that regard, it is worth noting that the statutory damages provision in the Communications Act, at issue in the instant case, closely tracks the language of the Copyright Act. Both statutes provide that statutory damages may be awarded within a given range "as the court considers just." 17 U.S.C. § 504(c)(1) and 47 U.S.C. § 605(e)(3)(C)(i)(II). The Feltner opinion noted that "[t]he word 'court' in this context appears to mean judge, not jury," 523 U.S. at 346, and concluded, "[w]e thus

---

[3] On remand, the jury imposed statutory damages of $31.68 million, Columbia Pictures Television, Inc., v. Krypton Broadcasting of Birmingham, Inc., 259 F.3d 1186, 1191 (9th Cir. 2001), reminding one of the old adage, "Be careful what you wish for, lest it come true."

4

discern no statutory right to a jury trial when a copyright owner elects to recover statutory damages." Id. at 347.

The Court next turned to the constitutional issue. The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. amend. VII. The right to jury trial "is not limited to actions that actually existed at common law, but extends to actions analogous thereto." J&J Sports Productions, Inc., v. Orellana, No. 08-05468, 2010 WL 1576447, at *2 (N.D. Cal. Apr. 19, 2010) (quoting Spinelli v. Gaughan, 12 F.3d 853, 855 (9th Cir. 1993) (citing Tull v. United States, 481 U.S. 412, 417 (1987))). The Feltner Court thus assessed whether the copyright cause of action was "analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." 523 U.S. at 348 (quoting Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989) (citing Curtis v. Loether, 415 U.S. 189, 193 (1974))). The Court found that there was "clear and direct historical evidence that juries, both as a general matter and in copyright cases, set the amount of damages awarded a successful plaintiff," 523 U.S. at 355, and concluded as a result that "the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself." Id.[4] It is noteworthy that the Fourth Circuit Court of Appeals earlier reached the same conclusion in an action seeking statutory damages under the Copyright Act. Gnossos Music v. Mitken, Inc., 653 F.2d 117, 121 (4th Cir. 1981) ("In our view, the application of the seventh amendment to the facts of this case mandates a trial by jury.").

---

[4] In reaching this conclusion, the Court distinguished its earlier decision in Tull v. United States, 481 U.S. 412 (1987), where it held that Congress could constitutionally authorize trial judges to assess the amount of civil penalties in a Clean Water Act violation case on the basis that there was no evidence presented in Tull that juries historically had determined the amount of civil penalties to be paid to the government and that such civil penalties could be viewed as analogous to sentencing in a criminal proceeding. 523 U.S. at 355.

Thus, "Feltner holds that a claim for statutory damages under § 504(c) is a suit at law to which the seventh amendment applies. This does not mean, however, that a jury must resolve every dispute. When there are no disputes of material fact, the court may enter summary judgment without transgressing the Constitution." BMG Music v. Gonzalez, 430 F.3d 888, 892 (7th Cir. 2005). As the Seventh Circuit explained in BMG Music:

> We read Feltner as establishing no more (and no less) than that cases under § 504(c) are normal civil actions subject to the normal allocation of functions between judge and jury. When there is a material dispute of fact to be resolved or discretion to be exercised in selecting a financial award, then either side is entitled to a jury; if there is no material dispute and a rule of law eliminates discretion in selecting the remedy, then summary judgment is permissible.

430 F.3d at 892-93 (citing Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 65 n.7 (1st Cir. 2000)).

In short, following Feltner, where, as here, a plaintiff seeks statutory damages in an unspecified amount up to the range authorized by Congress, a jury must decide where in that range to award damages. See Curtis v. Illumination Arts, Inc., No. C12-099JLR, 2013 WL 3788609, at *6 (W.D. Wash. July, 18, 2013) ("This court agrees with the Seventh Circuit's analysis in BMG Music, and accordingly must deny Plaintiff's motion for summary judgment with respect to an award of maximum statutory damages for Defendant's willful copyright violations. This is an issue that the court must reserve for the jury."). On the other hand, where a plaintiff seeks only the minimum amount of statutory damages, there is no jury issue and the court may enter summary judgment. BMG Music, 430 F.3d at 892.

Applying Feltner and its progeny to this case, there are two issues to be resolved by the court. First, does Feltner's consideration of the Copyright Act apply to DIRECTV's claims

under the Communications Act? Second, even if so, does this case present any genuine issues of material fact sufficient to withstand DIRECTV's motion for summary judgment?

Most of the other courts considering this issue have answered the first question in the affirmative. For example, in J&J Sports v. Orellana, the court, aptly noting that "causes of action for cable piracy and the interception of wireless transmissions did not exist in the late 18th century," nonetheless concluded that a party had the right to have a jury decide the range of statutory damages to be awarded. 2010 WL 1576447, at *3. The court analogized claims of cable piracy to longstanding common law torts involving interference with property rights, such as conversion. The court also concluded that an award of statutory damages is a legal, as opposed to an equitable remedy, reasoning as follows:

> Here, the Court finds no reason to depart from the general rule that monetary damages are legal in nature. Congress added the statutory damages provisions while it was concerned with deterring parties from stealing cable television services. See generally H. R. Rep. No. 98-934, at 83-85 (1984), reprinted in 1984 U.S.C.C.A.N. 4655, 4720-22. Thus, a reasonable assumption is that Congress intended these provisions to discourage theft. Because remedies intended to punish were generally issued by courts of law, this legislative context supports the conclusion that these damages are legal in nature. See Tull, 481 U.S. at 422 (citing Curtis v. Loether, 415 U.S. 189, 197 (1974)).

2010 WL 1576447, at *3. Reaching this conclusion, the Orellana court held "that the Seventh Amendment preserves the right to jury trial on issues related to Plaintiff's request for statutory damages under §§ 553 and 605." Id. at 4.[5]

---

[5] In reaching this conclusion, the court in Orellana rejected the contrary conclusion reached in Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214 (N.D.N.Y. 1998), finding it unpersuasive. In Nekos, the court deemed a statutory award of damages under § 605 to be akin to restitution, and thus equitable in nature. At least one court post-Feltner has taken the same position as did the Nekos court. See National Satellite Sports, Inc. v. Prashad, 76 F. Supp. 2d 1359 (S.D. Fla. 1999) (agreeing with Nekos and the pre-Feltner decision in Storer Cable Communications v. Joe's Place Bar & Restaurant, 819 F. Supp. 593 (W.D. Ky. 1993), that statutory damages under § 605 are restitutionary and equitable in nature affording no right to jury determination). The conclusion reached by the Nekos and Prashad courts has not carried the day, however, as subsequent decisions have found them not to be persuasive. See Time Warner Cable of New York City v. Negovan, No. 99 Civ. 5910 NGMDG, 2001 WL 1182843, at *3 (E.D.N.Y. July

7

The same conclusion was reached by the court in National Satellite Sports, Inc. v. No Frills Restaurant, Inc., 15 F. Supp. 2d 1360 (S.D. Fla. 1998). Also likening cable piracy to common law invasions of property rights, the No Frills court concluded that:

> [T]he interest in punishing violators and deterring future instances of unlawful interception of satellite communications strongly indicates that the remedy offered by section 605 is indeed a legal one. . . . Because Plaintiff's cause of action is analogous to common law suits for interference with property rights, which were tried before juries in courts of law, and because the remedy that Plaintiff seeks is legal in nature, Defendants are entitled to a trial by jury.

Id. at 1363-64; see also J&J Sports Productions, Inc. v. Jimenez, No. 10cv0866 DMS (RBB), 2010 WL 4639314, at *3 (S.D. Cal. Nov. 8, 2010) ("[T]he Seventh Amendment preserves the right to jury trial for statutory damage claims under Sections 553 and 605."); Joe Hand Promotions v. Lukito, No. C-10-00209-JF, 2010 WL 2854464, at *3 (N.D. Cal. July 20, 2010) (same); Time Warner Cable of New York City v. Negovan, No. 99 Civ. 5910 NGMDG, 2001 WL 1182843, at *6 (E.D.N.Y. July 30, 2001) ("Feltner necessarily requires a jury trial in claims for statutory damages under the Communications Act."); Time Warner Cable of New York City v. Kline, Davis & Mann, Inc., No. 00CIV2897KMWHBP, 2000 WL 1863763, at *4 (S.D.N.Y. Dec. 20, 2000) (recognizing the competing arguments that a claim for statutory damages under the Communications Act seeks a legal, as opposed to an equitable remedy, the court concluded that "trying this case to a jury will ensure that the right provided by the Seventh Amendment is recognized and enforced to the fullest extent while no rights justify the alternative course"); National Satellite Sports, Inc. v. Cotter's Lounge, Inc., 88 F. Supp. 2d 1024, 1027 (E.D. Mo.

---

30, 2001) ("Attempts by courts [citing Nekos and Prashad] to distinguish the property rights protected under the Communications Act from those under the copyright, trademark or patent laws make little sense."); National Satellite Sports, Inc. v. Cotter's Lounge, Inc., 88 F. Supp. 2d 1024, 1026 (E.D. Mo. 2000) ("[T]he court is unpersuaded by these decisions [referencing Storer, Nekos and Prashad] and finds that the remedy is best characterized as a legal remedy."). Given the Supreme Court's opinion in Feltner, the court likewise is unpersuaded by the conclusion reached in Nekos and Prashad that there is no right to jury trial for a claim of statutory damages under the Communications Act.

2000) ("Because the remedy that is sought by plaintiff in the present [§ 605] case is legal in nature, the defendant is entitled to a trial by jury under the Seventh Amendment."). The court finds these decisions to be well-reasoned and concurs that the Seventh Amendment entitles a party to trial by jury on a claim for statutory damages within the range set out in § 605 of the Communications Act.[6]

This conclusion does not end the inquiry, however, as there must still be a genuine issue of material fact in dispute for the jury to decide. DIRECTV argues that the court should award damages near the high end of the statutory range, i.e., $10,000 per violation, while the Coley

---

[6] DIRECTV's effort to distinguish Feltner in its Reply Brief, Dkt. # 212, fails miserably. DIRECTV cites four cases for the proposition that a court may resolve issues of statutory damages on summary judgment in Copyright Act or Communications Act cases, but none of the cases cited are helpful. Three of the cases, Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir. 1990); Morley Music Co. v. Dick Stacey's Plaza Motel, Inc., 725 F.2d 1 (1st Cir. 1983); and Blue Seas Music, Inc. v. Fitness Surveys, Inc., 831 F. Supp. 863 (N.D. Ga. 1993), were all decided before Feltner and thus are subject to question. The fourth case cited by DIRECTV, Broadcast Music, Inc. v. Entertainment Complex, Inc., while decided after Feltner, is not helpful, as the defendant in that case "waived his right to a jury trial on issues regarding statutory damages by his failure to make a timely jury demand." 198 F. Supp. 2d 1291, 1294 (N.D. Ala. 2002). Moreover, none of these four statutory damages cases arise out of the Fourth Circuit, which applied the Seventh Amendment to claims of statutory damages even before Feltner was decided. See Gnossos Music v. Mitken, Inc., 653 F.2d 117, 121 (4th Cir. 1981).

Further, while DIRECTV cites BMG Music for the straightforward proposition that where there are no disputes of material fact the court may enter summary judgment without transgressing the Constitution, it fails to recognize that the plaintiff in BMG Music sought only the minimum award of statutory damages, thus eliminating any jury question. 430 F.3d at 892.

DIRECTV's citation to Microsoft Corp. v. Image & Business Solutions, Inc., No. CV 05-6807 ABC (RCx), 2007 WL 2874430 (C.D. Cal. May 4, 2007), is particularly disconcerting. There, the court expressly declined to follow BMG Music based on earlier Ninth Circuit precedent, a position which was undermined by a subsequent Ninth Circuit decision in GoPets Ltd. v. Hise, 657 F.3d 1024, 1034 (9th Cir. 2011) ("[T]he Seventh Amendment provides a right to a jury trial both as to liability and as to the amount of actual copyright damages, even though the copyright statute does not so provide."). Noting this history, the court in Curtis v. Illumination Arts, Inc. recently stated that "this court cannot conclude that the rationale of the Microsoft court to decide a claim under the Copyright Act for maximum statutory damages on summary judgment remains viable." 2013 WL 3788609 at *6, n.5 (W.D. Wash. July 18, 2013).

The other three cases cited by DIRECTV, Stanko v. Maher, 419 F.3d 1107, 1112 (10th Cir. 2006); Garvie v. City of Fort Walton Beach, 366 F.3d 1186, 1190 (11th Cir. 2004); and Phillips v. Kidsoft, LLC, No. CCB-96-3827, 1999 U.S. Dist. LEXIS 16564 (D. Md. Feb. 17, 1999), all miss the mark, as none concerned the issue of an award of statutory damages. Stanko and Garvie involved claims of unconstitutional takings, and the summary judgment issues resolved by the court concerned the merits of those cases. While statutory damages were available in Phillips, a copyright infringement case, the court did not reach that issue but rather granted summary judgment on the issue of willfulness based on defendant's admitted copying of plaintiff's maze drawings and on the number of copyright violations based on construction of the copyright statute.

9

defendants contend that the damages awarded should reflect DIRECTV's actual losses and fall near the low end. As the case is presently postured, "[w]hat number between [$1,000 and $10,000 per violation] is 'just' recompense is a question for the jury . . . ." BMG Music, 430 F.3d at 892. On the other hand, were DIRECTV to elect to recover only the statutory minimum award of $1,000 per violation, no jury determination would be needed as to the range of statutory damages. In other words, because the law requires at least $1,000 in damages per violation, were DIRECTV to elect to seek only this minimal amount per violation, there would no longer be "a material dispute of fact to be resolved or discretion to be exercised in selecting a financial award . . . [rendering] summary judgment . . . permissible." Id. at 892-93 (citing Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 65 n.7 (1st Cir. 2000))

In sum, the court agrees with the Coley defendants' first argument that the Seventh Amendment entitles them to have a jury decide what range of statutory damages to apply. Because the parties disagree as to which portion of the statutory range is appropriate under the facts of this case, the court cannot reach the third argument raised by the Coley defendants that damages awarded should reflect DIRECTV's actual losses and be at the low end of the statutory range, as this issue must be decided by a jury.

### III.

The parties disagree as to the number of § 605(a) violations for which the Coley defendants should be held responsible. DIRECTV contends that the Coley defendants are liable for at least 2,561 violations of § 605(a), while the Coley defendants insist that they are potentially liable for no more than a single violation.

With respect to this issue, the facts are undisputed. As detailed in the court's summary judgment opinion on liability, Dkt. # 203, the Coley defendants provided DIRECTV

programming to 2,561 subscriber units at Massanutten Resort and were paid approximately $40,000 a month. Dkt. # 203, at 6-7.[7] The Coley defendants only reported 168 of these units to DIRECTV and paid DIRECTV a mere $2,078 a month, pocketing the substantial difference. In sum, the Coley defendants were paid monthly subscriber fees for 2,393 subscriber units for which they made no payment to DIRECTV.

The Coley defendants argue that the number of households to which they transmitted the pirated signal is not determinative of the number of § 605(a) violations. Rather, they contend that because they "used a single 'headend' and a single cable infrastructure at Massanutten Resort to receive and transmit DIRECTV's satellite signal," Defs.' Mem. in Opp. to DIRECTV's Mot. for Partial Summ. J. for Statutory Damages, Dkt. # 211, at 7, they are responsible, at most, for "only one act of signal piracy." Id.

The Coley defendants cite one case in support of this argument, DIRECTV v. Webb, 545 F.3d 837 (9th Cir. 2008), but that case does not support their position. There, Scott Webb purchased the hardware for a DIRECTV system but never activated an account or paid DIRECTV for a satellite television signal. Instead, he bought fifty-seven pirate access devices and used them to unlawfully receive the DIRECTV signal in his home. The district court found that Webb's possession of fifty-seven pirate access devices resulted in fifty-seven statutory violations, but the Ninth Circuit disagreed, concluding that Webb's "system was capable of just one signal interception no matter how many devices Webb attached to it." 545 F.3d at 845.

Rather than focus on the number of pirate access devices in Webb's possession, the Ninth Circuit concluded that the proper focus should be on how many signals were pirated, reasoning

---

[7] The 2,561 figure consists of 2,353 subscriber units at Massanutten managed by Great Eastern Resort Management, Inc., 168 Mountainside Villa subscriber units and 40 independently owned homes.

11

as follows: "Whether Webb used one or fifty-seven devices to steal DTV's signal, his personal use of devices in conjunction with his DTV hardware constituted one violation . . . ." Id.

The Coley defendants' reliance on Webb misses the mark for two reasons. First, unlike in Webb, the Coley defendants did not steal a satellite television signal for just one household. Rather, they transmitted pirated satellite television signals to 2,561 subscriber units. Second, unlike Webb's theft for personal use, the Coley defendants profited handsomely by collecting thousands of DIRECTV subscriber fees from the various Massanutten properties and remitting a miniscule fraction of those payments to DIRECTV. In short, the Coley defendants cannot pocket DIRECTV subscriber fees from 2,561 subscriber units, remit fees to DIRECTV for only 168 of these units, and suggest that their actions constitute only one violation. This is not a case like Webb, where the pirate stole one signal for his personal use. In this case, the Coley defendants profited by transmitting the stolen DIRECTV signal to thousands of units, and a violation took place each time the Coley defendants transmitted the DIRECTV satellite television signal to a person outside an authorized channel of transmission. While the Coley defendants paid for, and were authorized to transmit, the DIRECTV signal to 168 persons, they did not pay for, and were not authorized to transmit, the DIRECTV signal to the other 2,393 subscriber units.

In this regard, the Coley defendants' argument that they engaged in only one violation of § 605(a) because they only received one DIRECTV signal at the Massanutten headend is undermined by the language of the statute. On its face, § 605(a) is violated each time the Coley defendants transmit DIRECTV's signal to a person through an unauthorized channel. It does not matter that the Coley defendants only received the DIRECTV satellite signal at a single headend; that they were authorized to do. What they were not authorized to do and what violates the statute is that the Coley defendants then transmitted the signal to 2,393 unauthorized subscriber

units. As the statute is violated each time the Coley defendants transmitted the pirated signal to a person through an unauthorized channel, the evidence establishes 2,393 separate violations of the statute.

Finally, Feltner does not require that the court send the issue of the number of violations to the jury as there is no dispute as to the number requiring resolution by a trier of fact. Moreover, in Feltner, while the Court required a jury to decide the amount of statutory damages to be awarded, it allowed the district court to determine the number of copyright violations. The district court in Feltner determined that there had been a total of 440 acts of infringement and imposed statutory damages for willful infringement of $20,000 per act of infringement. While the Supreme Court vacated the statutory damages award, concluding that the Seventh Amendment provided a right to jury trial where the copyright owner elects to recover statutory damages, "[t]he Court left undisturbed the district court's finding . . . that Feltner is liable to Columbia for 440 separate instances of copyright infringement." Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc., 152 F.3d 1171, 1171-72 (9th Cir. 1998). There is no genuine issue of material fact in dispute as to this issue in the instant case, and the court finds the Coley defendants to be liable for 2,393 violations of § 605(a).

## IV.

Accordingly, DIRECTV's motion for partial summary judgment for statutory damages against the Coley defendants (Dkt. # 209) is **GRANTED IN PART** and **DENIED IN PART**. The Coley defendants are liable for statutory damages for 2,393 violations of § 605(a), in the range between $1,000 and $10,000 per violation. While there is no genuine issue of material fact in dispute regarding the number of violations, a jury is required to determine where within the statutory range the damages fall in this case.

An appropriate Order will be entered this day.

Entered: 11/07/13

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge