**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **SKY CABLE, LLC, et al.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No.: 5:11-cv-48** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RANDY COLEY, et al.,** | ) | **By: Hon. Robert S. Ballou** |
| | ) | **United States Magistrate Judge** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

In this Federal Communications Act ("FCA") civil action, the court granted summary judgment in favor of Cross-Claim and Third-Party Plaintiff DIRECTV, LLC ("DIRECTV") on its FCA claim, pursuant to 47 U.S.C. § 605, and awarded statutory damages of $2,393,000.00, plus pre-judgment interest from December 14, 2009. This Report and Recommendation addresses DIRECTV's motion for an award of attorneys' fees and expenses as a prevailing party under the FCA. Specifically, DIRECTV seeks an attorneys' fee award of $428,944.50, costs of $16,691.03, for a total award of $445,635.53. Defendants Randy Coley and East Coast Cablevision, LLC (collectively the "Coley Defendants")[1] oppose the motion for attorneys' fees and expenses on numerous grounds. Having considered the record, the legal arguments and the applicable law, and pursuant to 28 U.S.C. § 636(b)(1)(B), I **RECOMMEND** that DIRECTV's Motion for Attorneys' Fees be **GRANTED**, and that DIRECTV be awarded Two Hundred Thirty Six Thousand and Thirteen and 85/100 Dollars (**$236,013.85**) in attorneys' fees and expenses.

---

[1] Randy Coley is the sole member and manager of East Coast Cablevision, LLC.

1

# I.

The facts of this case are fully set forth in the District Court's July 11, 2013 Memorandum Opinion awarding partial summary judgment to DIRECTV. Dkt. No. 203. This case arises out of the receipt and unauthorized distribution of DIRECTV satellite programming to thousands of viewers at Massanutten Resort. DIRECTV asserted five separate claims against the Coley Defendants in its First Amended Cross-Claim and Third-Party Complaint dated August 3, 2012 ("Amended Complaint"). Dkt. No. 127. The Court granted DIRECTV's motions for partial summary judgment against the Coley Defendants on its FCA claim, Dkt. Nos. 203 & 213, and awarded statutory damages against the Coley Defendants in the amount of $2,393,000.00, representing 2,393 violations of 47 U.S.C. § 605(a) for improperly receiving and distributing the DIRECTV satellite programming. Dkt. No. 220. DIRECTV and the Coley Defendants subsequently stipulated to dismissal of the remaining claims, and the Court entered final judgment on January 30, 2014. Dkt. No. 224.

On February 6, 2014, DIRECTV submitted its application for attorneys' fees and costs under the FCA, Federal Rule of Civil Procedure 54(d), and 28 U.S.C. § 1920. Dkt. No. 227. The Coley Defendants filed a Memorandum in Opposition to the application on February 19, 2014, and DIRECTV filed a Reply in Support of its Application on February 26, 2014. Dkt. No. 230 & 231. This matter has been fully briefed and is ripe for decision.

## Applicable Law

When a litigant brings a successful FCA claim under 47 U.S.C. § 605(a) or § 605(e)(4), the Court "shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). The parties agree that

DIRECTV is the "prevailing party" and is entitled to an award of fees and costs under 47 U.S.C. § 605. The Coley Defendants take issue, however, with various aspects of DIRECTV's fee request, including: (1) the reasonableness of the hourly rates charged by DIRECTV's counsel; (2) the reasonableness of the hours and costs enumerated in DIRECTV's fee petition; (3) DIRECTV's characterization of its litigation success; and (4) specific items of expenses.

DIRECTV has the burden of establishing that its requested amount of attorneys' fees is reasonable. McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014). The Fourth Circuit follows a three-step process for courts to use in determining a reasonable attorneys' fee award. Id. First, the court determines the lodestar figure, which is calculated by multiplying the reasonable number of hours expended by the reasonable hourly rate. Id. Courts evaluate the reasonableness of the hours expended and rates sought on fee petitions under the lodestar method using the twelve factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th. Cir. 1974), as adopted by Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir. 1978). See Robinson v. Equifax Info. Servs., 560 F.3d 235, 243–44 (4th Cir. 2009).[2] Second, the court subtracts fees for hours spent on unsuccessful claims unrelated to successful claims. McAfee, 738 F.3d at 88. Finally, the court awards a percentage of the remaining amount to the plaintiff, depending on the degree of success of plaintiff's claims. Id.

A strong presumption exists that a properly calculated the lodestar figure is reasonable. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010). That presumption may be

---

[2] The Fourth Circuit has construed the Johnson factors as: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Robinson, 560 F.3d at 243–44.

3

overcome only in rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee. Id.

**Analysis**

The Coley Defendants have asserted several objections to DIRECTV's fee application which the Court will address in turn. The analysis of the objections raised by the Coley Defendants will necessarily address the Johnson factors relevant to this particular fee petition.

### 1. Hourly Rates

The reasonable hourly rate for purposes of the lodestar figure is generally the prevailing market rate for comparable services in the community in which the services were rendered. In re Mullins, Civ. A. No. 95-178-A, 1996 WL 148527, *3 (W.D. Va. Feb. 12, 1996). The determination of the reasonable hourly rate is a fact intensive exercise requiring the fee applicant to produce "specific evidence" of prevailing market rates in the relevant community for similar services in similar circumstances. Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987). The relevant legal community is generally that in which the district court sits. Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 179 (4th Cir. 1994).

The Coley Defendants challenge the hourly rates charged by DIRECTV's attorneys as unreasonable.[3] DIRECTV was represented in this action by two law firms, Yarmuth Wilsdon, PLLC, and Williams Mullen, P.C. Each firm employed a team of partners, associates, and

---

[3] The Coley Defendants asked the court to dismiss the fee petition in its entirety because DIRECTV failed to include affidavits from disinterested attorneys who practice in the community and are "knowledgeable about fees litigators charge in actions arising under the substantive statute in issue." Dkt. No. 230, p. 4. Typically, evidence "sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 245 (4th Cir. 2009). DIRECTV submitted the affidavit of Richard H. Matthews, Esq., of Pender & Coward, P.C. in Virginia Beach, stating that the rates charged by DIRECTV's counsel are reasonable for this type of litigation in federal courts in Virginia. Dkt. No. 231-2. The Coley Defendants have not sought to challenge this affidavit, and thus, the Court considers the application procedurally valid. See Robinson v. Equifax Info. Servs, LLC, 560 F.3d 235, 245 (4th Cir. 2009).

4

paralegals to work on this case. The hourly rates charged by the professionals at each firm

varied, but are generally categorized as follows: partners $340–$540 per hour; associates $295–

$310 per hour; paralegals $120–$195 per hour.

Fee applicants in the Fourth Circuit are required to show that the hourly rates submitted

are "consistent with the prevailing market rates in the relevant community for the [particular]

type of work . . . ." McAfee, 738 F.3d at 91. DIRECTV submitted the affidavit of Richard

Matthews in support of the hourly rates charged by Yarmuth Wilsdon and Williams Mullen. The

Coley Defendants contend that the hourly rates sought are unreasonably high for the

Harrisonburg community, and cite several FCA cases in which the courts awarded lower hourly

rates than those submitted in this case.[4]

Recent cases in this Court are illustrative of reasonable hourly rates for highly qualified

and experienced attorneys in the Harrisonburg market. In Three Rivers Landing of Gulfport, LP

v. Three Rivers Landing, LLC, this Court found that an hourly rate of $685 for an attorney based

in Richmond, Virginia was unreasonably high for the Roanoke Valley and Western District of

Virginia, and reduced the fee to a $500 hourly rate. 7:11-CV-00025, 2014 WL 1599564, at *3–4

(W.D. Va. April 21, 2014). Likewise, in Allstar Lodging, Inc. v. Rookard, this Court found that

$650 an hour for a highly qualified Washington D.C. attorney was an "enormous" hourly rate for

---

[4] The Coley Defendants argue that courts in the Fourth Circuit have awarded significantly less than $350.00 an hour to cable and satellite television providers who prevail in FCA actions. Dkt. No. 230, p. 5. The arduous nature of this litigation stands in stark contrast to the cases cited by the Coley Defendants, all six of which ended in default judgment, with the largest attorneys' fees award sought being $3,998.00. See J & J Sports Productions v. Waters, No. 3:12-cv-267, 2012 WL 5930167, at *4 (W.D.N.C. Nov. 27, 2012); J & J Sports Productions v. Romenski, 845 F. Supp. 2d 703, 708 (W.D.N.C. 2012); Joe Hand Promotions, Inc. v. Citibars, Inc., 2:11CV58, 2012 WL 503212 (E.D. Va. Feb. 8, 2012) report and recommendation adopted, 2:11CV58, 2012 WL 662520 (E.D. Va. Feb. 28, 2012); J & J Sports Productions v. Tellez, No. 11-cv-2823, 2011 WL 6371521, at *6 (E.D.N.Y. Dec. 20, 2011); DIRECTV v. Cibulka, Civ. Action No. 1:11-cv-00231, 2011 WL 3273058, at *1 (M.D. Pa. July 29, 2011). The instant case was thoroughly litigated over the course of three years, and over 230 docket entries have been filed to date. DIRECTV won a judgment of greater than two million dollars and a permanent injunction against the Coley Defendants after dispensing with multiple counterclaims, discovery disputes, issues regarding the Coley Defendants' bankruptcy claims, and claims of third parties. The Court's evaluation of the reasonableness of the hourly rates in this case is based on the complexity of this litigation, as well as reasonable market rates for the Harrisonburg market.

Harrisonburg, and reduced the hourly rate to $350. 5:13CV00053, 2013 WL 6002070 at *5

(W.D. Va. Nov. 12, 2103). See also Hudson v. Pittsylvania Cnty., Va., 4:11CV00043, 2013 WL

4520023 (W.D. Va. Aug. 26, 2013) (reducing a $400 hourly rate in a Danville, Virginia case to

$350 per hour); Chadwell v. Lee Cnty. Sch. Bd., 535 F.Supp.2d 586, 603 (W.D. Va. 2008)

(reducing hourly rate from $350 to $250 for civil rights case in Big Stone Gap, Virginia); Double

K Props., LLC v. Aaron Rents, Inc., 2003 WL 22697218, at *4 (W.D. Va. Nov. 14, 2003)

(reducing hourly rate of counsel in commercial lease dispute case in Abingdon, Virginia, from

$550 to $210).

 Here, I find that DIRECTV's counsel from both Yarmuth Wilsdon and Williams Mullen

are highly qualified lawyers with significant experience in the area of law at hand. However,

based upon the cases cited above, as well as the Court's knowledge of the fees generally charged

by attorneys in the Harrisonburg division, the Court will exercise its discretion to bring the

hourly rates in line with reasonable market rates. Accordingly, the Court reduces the hourly

rates for billing partners in this matter to a cap of $350 per hour, with corresponding reductions

for associates to a rate of $225 per hour, and paralegals and legal assistants to $100 per hour.

### 2. Block Billing

 The Coley Defendants assert that DIRECTV provided insufficient documentation to the

Court to accurately determine the reasonableness of the time billed by its counsel. Specifically,

the Coley Defendants argue that the fee application is "replete" with block billing or "lumping"

multiple tasks into the same billing entry, and thus a reduction of the total fee award is

warranted. Courts in this circuit have routinely held that "block billing" does not provide the

court with a sufficient breakdown to support an attorneys' fee request. "Inadequate

documentation includes the practice of grouping, or 'lumping,' several tasks together under a

single entry, without specifying the amount of time spent on each particular task." Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006); see also Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012); McAfee v. Boczar, 906 F. Supp. 2d 484, 498 (E.D. Va. 2012) vacated and remanded on other grounds, 738 F.3d 81 (4th Cir. 2013), as amended (Jan. 23, 2014) ("The practice of 'block billing' has been generally disfavored in federal courts across the country and has often led to a reduction in attorney's fees.") As the Court explained in Project Vote, "[w]hile perhaps 'block billing' is not prohibited, it simply does not provide the court with the sufficient breakdown to meet [the applicant's] burden to support its fee request in specific instances." 887 F. Supp 2d at 716. "The court's role is not to labor to dissect every individual entry to hypothesize if the different tasks in the same entry could reasonably result in the requested time." Id. at 717. See also Guidry, 442 F. Supp. 2d at 294 ("Indeed, fee claimants must submit documentation that reflects 'reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity,' sufficient to permit the Court to weigh the hours claimed and exclude hours that were not 'reasonably expended.'") (citing EEOC v. Nutri/System, Inc., 685 F. Supp. 568, 573 (E.D. Va. 1988)).

Accordingly, courts have found that "[l]umping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case." Guidry, at 294. Courts reduce the fee award in such circumstances by either identifying specific hours that are not sufficiently documented or by reducing the overall fee award by a fixed percentage based on the trial court's familiarity with the case, its complexity, and the counsel involved. See Project Vote, 887 F. Supp. 2d at 716; McAfee, 906 F.Supp.2d at 497–500; Guidry, 442 F. Supp. 2d at 294. In

7

Project Vote, the Court noted that counsel's time logs reported the entries with "no breakdown of how the time was spent among often as many as four or five distinct tasks," and thus, "[i]n light of the inexact documentation and the resulting inability of the court to properly assess the reasonableness of the time requested," the court applied a fixed percentage reduction of ten percent to the fee award. Id. at 716.

Examining the time sheets provided by DIRECTV's counsel, I find several instances of block billing by attorneys at Yarmuth Wilsdon. For example, entries dated May 24, 2012, June 29, 2012, September 10, 2012, and October 10, 2012, contain blocks of 4.4 to 5.9 hours of time, in which several unrelated tasks are combined. Dkt. No. 227-2. Specifically, on May 24, 2012, attorney Jamnback billed 4.5 hours for "[c]onferences with S. Wilsdon (re: case status, planning) and M. Houck (re: factual research); prepare correspondence to D. Hunt and Jacobs (re: Rule 26(f) conference); telephone conference with J. Green (re: case status, planning); review interpleader issues; legal research (re: same)." Dkt. No. 227-2, p. 13. This entry is characteristic of many included in Yarmuth Wilsdon's records.

Such entries for large blocks of time containing multiple, unrelated tasks are the essence of block billing. The Court cannot discern from these entries how much time was spent on a particular task and, therefore, whether the time spent was reasonable. As the decisions in Guidry, Project Vote, and McAfee make clear, the Court's ability to determine the reasonableness of hours expended is critical to an award of attorneys' fees, and block billing has consistently warranted a reduction of the total award in the Fourth Circuit. See SunTrust Mortgage, Inc. v. AIG United Guar. Corp., 933 F. Supp. 2d 762, 778 (E.D. Va. 2013) (reducing the hours claimed by twenty percent due to block billing, unintelligible and inconsistent time entries); McAfee, 906 F. Supp. 2d at 500 (reducing the hours claimed by ten percent due to block

8

billing); Project Vote, 887 F. Supp. 2d at 717 (reducing total fee request by ten percent due to block billing); Wolfe v. Green, CIV. A. 2:08-01023, 2010 WL 3809857, at *8 (S.D.W. Va. Sept. 24, 2010) (reducing total fee award by ten percent to account for counsel's practice from time to time of block billing). I find this approach appropriate in this case, and recommend a fifteen percent reduction to the amount of attorneys' fees awarded based on Yarmuth Wilsdon's records. I do not find significant block billing in the records submitted by Williams Mullen, and will not further reduce the total award based upon its records.

### 3. Clerical and Administrative Tasks

The Coley Defendants also argue that bills from DIRECTV's counsel include "hundreds of hours" spent on non-compensable clerical and administrative tasks performed by legal assistants and paralegals. Indeed, "[p]urely clerical activities, regardless of who performs them, are considered overhead and are not compensable as…attorney fees." Abusamhadaneh v. Taylor, No. 1:11CV939, 2013 WL 193778 (E.D. Va. Jan. 17, 2013). However, when reviewing attorney fee petitions, the Supreme Court has recognized that there is a gray area of compensable tasks that might appropriately be performed either by an attorney or a paralegal. Missouri v. Jenkins, 491 U.S. 274, 288 n. 10 (1989). In Jenkins, the Supreme Court noted that "[b]y encouraging the use of lower cost paralegals rather than attorneys wherever possible, permitting market-rate billing of paralegal hours 'encourages cost-effective delivery of legal services and, [] reduc[es] the spiraling cost of [] litigation.'" Id. at 288 (citing Cameo Convalescent Center, Inc. v. Senn, 738 F.2d 836, 846 (7th Cir. 1984)). Additionally, courts have consistently awarded fees for paralegal work under 47 U.S.C. § 605(e)(3)(B)(iii) that is not purely clerical. See Kingvision Pay-Per-View Ltd. v. Zalazar, 653 F. Supp. 2d 335, 344 (S.D.N.Y. 2009); Charter Commc'ns Entm't I, LLC v. Rodriguez, 425 F. Supp. 2d 282, 286 (D. Conn. 2006); DIRECTV, Inc. v.

9

Carrera, 6:03CV00093, 2005 WL 2347350 (W.D. Va. Sept. 22, 2005); Time Warner Cable of New York City v. Sanchez, No. 02 Civ.5855 GBD FM, 2003 WL 21744089 (S.D.N.Y. July 8, 2003).

The Coley Defendants do not point to specific entries of purely clerical work in DIRECTV's fee application.  Rather, they argue that since clerical work is not compensable, all entries by paralegals and legal assistants in the fee petition should be disallowed.  In response, DIRECTV concedes that entries by legal assistant and paralegal Colette Saunders ("CS") are purely clerical and does not object to the exclusion of those entries, but argues that other entries by paralegals and legal assistants fall in the "gray area" described in Jenkins and are compensable.

Given this concession by DIRECTV, I will exclude the entries of Colette Saunders as purely clerical. I will also exclude the entries of Lori Costa ("LC") from the billing records of Williams Mullen, finding them to be clerical in nature.  Ms. Costa's services consisted primarily of obtaining recently filed documents, and labeling and organizing files. Dkt. No. 227-1.  I find the remaining entries of paralegals from Yarmuth Wilsdon and Williams Mullen to be compensable. For example, paralegal Michael Houck's entry dated June 1, 2012, of "[f]actual research (re: Coley's assets); meeting with J. Jamnback (re: same)" is a clearly compensable task, and is characteristic of his other entries. Dkt. No. 227-2, p. 14.  Likewise, paralegal Deborah Johnson's entry dated December 6, 2012, of "[f]inalize motion to show cause (re: Coley discovery); prepare Jamnback declaration and exhibits" is compensable. Dkt. No. 227-2, p. 19. To the extent that other entries of the paralegals suggest duties that are more clerical than compensable, the Court's prior percentage reduction of DIRECTV's attorneys' fees for block

billing accounts for such entries.  The Court does not find significant instances of purely clerical tasks being performed by billing attorneys and will not reduce the award on this basis.

**4. Duplication of Effort and Lack of Billing Judgment**

The Coley Defendants argue that the fee application should be substantially reduced because it contains duplication of effort and lack of billing judgment.  Specifically, the Coley Defendants contend that the use of eight billing time keepers by Yarmuth Wilsdon and five billing time keepers by Williams Mullen was excessive.

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  However, "there is nothing inherently unreasonable about a client having multiple attorneys," especially in a complex civil case.  McAfee, 906 F. Supp. 2d at 501 (quoting Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988)) (internal quotation marks omitted).  When reviewing the hours sought, the court must focus on the reasonableness of the division of responsibility between counsel.  Reduction of hours is warranted only if counsel unreasonably duplicate each other's work.  See Project Vote, 887 F. Supp. 2d at 714.

The Coley Defendants do not point to specific entries of unreasonably duplicated work in DIRECTV's fee application. Rather, the Coley Defendants mischaracterize the complexity of this litigation by stating that "[o]ne or two lawyers within Yarmuth Wilsdon's 'Anti Piracy Litigation practice group'…should have been able to handle this Communications act suit." Dkt. No. 230, p. 9.  The Coley Defendants also cite as illustrative this Court's decision in DIRECTV v. Carrera, 6:03CV00093, 2005 WL 2347350, at *3 (W.D. Va. Sept. 22, 2005).  The Carrera case

11

involved a routine FCA violation resulting in a damages award of $7,500 against a pro se defendant. Id. In Carrera, the court found it "hard to fathom" why DIRECTV would need nineteen separate time keepers in such a routine case, and reduced the fees sought, commenting that "nothing about this case is rocket science." Id. The Carrera decision is not a relevant comparator to this case, which was thoroughly litigated for over three years, involved a fraudulently established cable system resulting in 2,393 § 605(a) violations, a $2.39 million dollar damages award, and a permanent injunction. The Coley Defendants vigorously challenged DIRECTV's claim under the FCA, resulting in an extensive motions practice and discovery. Thus, the Court finds the level of staffing present in the fee petition for this case to be reasonable. Further, having reviewed the bills submitted in support of the fee application, I find that DIRECTV's counsel generally divided the work to be performed in such a manner as to avoid duplication, and no reduction is warranted on that basis.

The Coley Defendants also object to a fee award for any work by DIRECTV's local counsel, Williams Mullen, arguing that employing local counsel in this matter was "unnecessary." The Coley Defendants rely in part on the fact that Yarmuth Wilsdon attorney John Jamnback is a member of the Virginia State Bar.

DIRECTV's employment of Williams Mullen as local counsel in this matter was not unreasonable.[5] While Mr. Jamnback remains a member of the Virginia bar, he is based in Seattle, and his firm does not have an office in Virginia. This Court's local rules require that attorneys admitted *pro hac vice* associate with a member of the local bar; that all pleadings be signed by a member of the local bar; and that a member of the local bar appear at all hearings

---

[5] The Coley Defendants asserted that the affidavit by Robert E. Travers attached to DIRECTV's attorneys' fee petition insufficiently set forth the identities, roles and rates of Williams Mullen's billing attorneys and paralegals. Dkt. No. 230, p. 10. DIRECTV addressed this contention with the affidavit of Craig L. Mytelka attached to DIRECTV's Reply in support of its attorneys' fee petition. Dkt. No. 231-3.

unless given permission to do otherwise by the presiding judge. W.D. Va. Gen. R. 6(d). Mr. Jamnback may not have had to be admitted *pro hac vice* to participate in this case, but it was the strategic decision of DIRECTV to have local counsel. Under the circumstances of this case and the logistical challenges presented because Yarmouth Wilsdon was based in Seattle, I do not find it unreasonable for DIRECTV to employ local counsel.[6]

### 5. Litigation against Sky Cable, LLC

The Coley Defendants claim that the Court should award no fees to DIRECTV for the hours it spent litigating against plaintiffs Sky Cable, LLC, ("Sky Cable") and Robert Saylor over the course of this action. DIRECTV responds that it should be awarded fees for those hours because the litigation with Sky Cable was directly related to the actions of the Coley Defendants, and the issues regarding Sky Cable and Robert Saylor were inextricably intertwined with DIRECTV's litigation with the Coley Defendants. An examination of the procedural history of the case is necessary to adjudicate these arguments.

On June 9, 2011, Sky Cable and Robert Saylor filed the original complaint in this matter naming six main defendants, including Randy Coley, and seven ancillary defendants, including DIRECTV. Dkt. No. 1. On June 30, 2011, DIRECTV requested, and the Court granted, a motion for extension of time to file a responsive pleading, citing the complexity of the claims asserted in the complaint and DIRECTV's need to investigate the contractual relationships among the parties involved. Dkt. No. 38. On September 19, 2011, Sky Cable and Robert Saylor filed a motion to dismiss all ancillary defendants other than DIRECTV from the action. Dkt. No. 55. On November 23, 2011, Sky Cable and Robert Saylor filed a second motion to dismiss certain defendants from the action, leaving only Randy Coley, Kimberli Coley, and DIRECTV as

---

[6] Notably, DIRECTV did not request reimbursement for the costs for Yarmuth Wilsdon attorneys to travel from Seattle to Virginia. Dkt. No. 231, p. 6.

13

defendants. Dkt. No. 61.  On December 14, 2011, DIRECTV filed a Motion to Dismiss for Failure to State a Claim or in the Alternative to Transfer Venue against Sky Cable and Robert Saylor, as well as a Cross-Claim against Randy Coley. Dkt. Nos. 65 & 66.  On March 23, 2012, Sky Cable and Robert Saylor's claims against DIRECTV were dismissed in favor of arbitration. Dkt. No. 108.

The Coley Defendants argue that DIRECTV should not be awarded attorneys' fees prior to December 14, 2011, the date it filed a cross claim against Randy Coley.  They further request that the Court  exclude from the attorneys' fee award entries pertaining to DIRECTV's claims against Sky Cable and Robert Saylor through March 23, 2012.

The Coley Defendants cite no authority for the proposition that a prevailing cross-claimant should not be awarded its fees and costs for time spent in the original litigation before the cross-claim was filed when the claims are factually related.  In Hensley v. Eckerhart, the Supreme Court noted, "[w]e recognize that there is no certain method of determining when claims are "related" or "unrelated." 461 U.S. at 437, n. 12.  When evaluating a fee request, the court should consider whether the work was "useful and of a type ordinarily necessary" to advance this litigation to its successful conclusion. Webb v. Board of Ed. of Dyer County, 471 U.S. 234, 243 (1985) (noting that work on "litigation" includes time spent drafting the initial pleadings and the work associated with the development of the theory of the case). The Supreme Court has emphasized that where a prevailing plaintiff's claims "involve a common core of facts or . . . [are] based on related legal theories . . . [s]uch a lawsuit cannot be viewed as a series of discrete claims." Hensley, 461 U.S. at 434–35.  Further, the Eastern District of Virginia has recognized that prevailing cross-claim plaintiffs can recover statutory damages for attorneys' fees and costs from defendants for legal work pertaining both to the successful cross-claim and

14

the initial action.  See NGM Ins. Co. v. Secured Title & Abstract, Inc., CIV. 3:07CV536, 2008 WL 4642957, at *4 (E.D. Va. Oct. 17, 2008) ("Having reviewed the detailed records and affidavits submitted by Cross-Claimant counsel… the Court finds that the fees charged in relationship to the initial interpleader action and subsequent cross-claim are reasonable, given the length and thoroughness of representation, the complexity of the issues, and the average rates in this local market for this type of representation. The Court will therefore award the full amount of the requested fees and costs expended thus far.").

Here, I find that the time billed by DIRECTV's counsel relating to the claims initiated by Sky Cable is inextricably intertwined with the cross-claim upon which it prevailed, and is properly assessed as attorneys' fees against the Coley Defendants. Indeed, DIRECTV was eventually found to be the proper plaintiff for the claim that Sky Cable and Robert Saylor initially filed. See Dkt. No. 203.[7]

After the Complaint was filed, all parties to the action were attempting to gather information about a complex set of operative facts.  See Dkt. Nos. 35, 38, 50.  Importantly, it was a single set of facts; those involving the fraudulent television system and the contractual relationships among the parties affected by it.  Prior to filing its cross-claim against the Coley Defendants, DIRECTV determined that it would move to dismiss or transfer venue in response to Sky Cable and Robert Saylor's complaint in favor of arbitration.  DIRECTV further determined that it was the proper plaintiff in the FCA claim against the Coley Defendants on the facts involved.  It therefore filed a cross-claim, on which it ultimately prevailed.

---

[7] "[A]ny claim Sky Cable has against the Coleys is entirely derivative of DIRECTV's claim against them for failure to pay DIRECTV the subscription fees it was owed . . . [t]he rights to be enforced under § 605 are those of DIRECTV, not Sky Cable." Dkt. No. 203, p. 18.

15

The litigation initiated by Sky Cable and Robert Saylor was necessary for DIRECTV to obtain the successful final result of the litigation. The core of this entire litigation is rooted in the wrongful conduct of the Coley Defendants. It is disingenuous now for the Coley Defendants to seek to exclude fees which DIRECTV incurred to respond to litigation caused directly by their wrongful conduct. As such, the Court will not exclude DIRECTV's attorneys' fees and costs related to DIRECTV's litigation against Sky Cable and Robert Saylor between December 14, 2011, and March 23, 2012.[8] Dkt. No. 69

### 6. Entries Relating to Massanutten Resort and/or Homeowners Associations

The Coley Defendants argue that the Court should not award fees to DIRECTV for hours spent negotiating with Massanutten Resort and for hours related to interpleader actions filed by various homeowners associations. DIRECTV removed most of the entries relating to the interpleader suits from its fee petition; however, some block entries by DIRECTV's attorneys contain work related to the interpleader claims. Consequently, the Court has accounted for these blocks in its prior percentage reduction for block billing.

DIRECTV also seeks reimbursement for attorneys' fees related to its contact with counsel for Massanutten Resort regarding cable service disruption at the Resort, and addressing how to convert the Resort's illegal cable system into one that complied with federal law. DIRECTV argues that the wrongful conduct of the Coley Defendants forced it to address the issues regarding the fraudulent cable system at Massanutten Resort. While this statement is undoubtedly true, I find that these fees are not properly assessed as attorneys' fees against the Coley Defendants under the FCA.

---

[8] The Coley Defendants specifically request exclusion of hours billed relating to DIRECTV's motion to dismiss or transfer venue filed against Sky Cable on December 14, 2011. However, Randy Coley filed a response in opposition to that motion (Dkt. No. 69), clearly evidencing that the claims involving Sky Cable and those with the Coley Defendants were intertwined.

DIRECTV is not entitled to recover fees from the Coley Defendants for work unrelated to pursuit of the ultimate result achieved. Hensley v. Eckerhart, 461 U.S. at 435. The fraudulent cable system established and maintained by the Coley Defendants did not force DIRECTV to pursue or defend against any claims by Massanutten Resort as a part of this action. DIRECTV's contact with Massanutten Resort and its counsel was not necessary to obtain the successful result of this litigation. Thus, I find that contact with Massanutten Resort's counsel is not compensable against the Coley Defendants, and the Court will exclude entries pertaining solely to contact with Massanutten Resort. I find ten such entries in reviewing the fee application.[9] I further find that legal work relating to Massanutten Resort and its counsel are found in blocks alongside appropriately submitted attorney work totaling approximately 100 entries throughout the fee petition. The Court has accounted for these blocks of time by the prior percentage reduction for block billing.

**7. Settlement Efforts**

The Coley Defendants contend that DIRECTV is not entitled to a fee award for hours spent on "futile settlement efforts." Dkt. No. 230, p. 12. DIRECTV's fee application includes entries associated with settlement discussions, as well as a mediation in January 2013 that was ultimately unsuccessful.

District courts have discretion to consider and award time spent on settlement negotiations in fee petitions. McAfee, 738 F.3d at 90–91. As the Fourth Circuit noted in McAfee, "failure to contemplate a settlement strategy makes for expensive litigation and the

---

[9] See entries dated October 24, 2011; November 3, 4, 5, and 10, 2011; January 26, 2012; June 12 and 26, 2012; July 6, 2012; and January 28, 2013, totaling 14.7 hours billed by John Jamnback. Dkt. No. 227-2.

defendant must bear the consequences. Id. (internal quotations omitted).[10]  As a corollary, an attorney has a duty to discuss settlement with a client and even to pursue reasonable settlement possibilities.  The ultimate failure of settlement discussions is part of the litigation process.  The Coley Defendants have not pointed to any case law suggesting that attorney fees are not recoverable as a matter of law where settlement discussions prove unsuccessful.

I find it prudent in this case to award attorneys' fees for time spent on settlement efforts by DIRECTV.  To do otherwise would create perverse incentives not to resolve cases arising under fee-shifting statutes by settlement. Such settlements conserve resources, both private and judicial, and may obviate the need for an eventual award of attorneys' fees.  The Coley Defendants had the opportunity to settle this matter, and it is not punitive to allow their failure to do so to be subsumed in the time component of the lodestar calculation.  Id.  Sound policy dictates that the Court award fees for time spent attempting to settle this case, and the Court has the discretion to do so here.

### 8. Entries Related to DIRECTV's Amended Complaint

The Coley Defendants claim that DIRECTV should not be awarded attorney fees for entries related to its Amended Complaint dated August 3, 2012, alleging that the only purpose of the Amended Complaint was to assert claims against co-defendant Kimberli Coley.  After it was awarded judgment against the Coley Defendants, DIRECTV stipulated to dismissal of defendant Kimberli Coley, without attorneys' fees or costs. Dkt. No. 225.  Thus, DIRECTV is not entitled to seek reimbursement from the Coley Defendants for fees related to its litigation against Kimberli Coley.  DIRECTV excluded from its fee petition all entries for work performed

---

[10] The Coley Defendants cite Hudson v. Pittsylvania Cnty., Va., 4:11CV00043, 2013 WL 4520023 (W.D. Va. Aug. 26, 2013)  for the assertion that this Court "approved" counsel's removal of time spent attempting to mediate the case from the fee petition. However, a review of that opinion reflects that the Court merely noted that counsel removed the settlement time voluntarily. Id. at n.1.

regarding Kimberli Coley, aside from a few entries billed for preparation of the Amended Complaint[11] and six entries submitted in which work regarding claims by and against her is billed as part of a block.[12]  None of the entries cited by the Coley Defendants in their opposition to the fee petition pertain solely to work regarding Kimberli Coley, but rather pertain to drafting the Amended Complaint.  DIRECTV asserts that its preparation of the Amended Complaint is compensable because it not only asserted claims against Kimberli Coley, but also asserted third party FCA claims against East Coast Cablevision, as well as new factual information regarding the Coley Defendants.

I find that DIRECTV's preparation of the Amended Complaint is compensable. It is the first instance of claims asserted against East Coast Cablevision in the course of the litigation, and DIRECTV ultimately prevailed over East Coast Cablevision in the FCA claim asserted in the Amended Complaint.  DIRECTV's entries pertaining to work on claims against East Coast Cablevision are, therefore, compensable under § 605.  Additionally, the Amended Complaint added new factual allegations regarding Randy Coley, and was the final iteration of the complaint on which DIRECTV ultimately prevailed.  Thus, the Court will not exclude time from the fee petition related to the Amended Complaint.

### 9. Taxable Costs

The Coley Defendants argue that the costs submitted by DIRECTV are not compensable, because "full costs" awarded under § 605(e) should be limited to taxable costs, such as those presented in DIRECTV's Bill of Costs.  Dkt. No. 228.  District courts have reached different conclusions on this issue.  See Directv, Inc. v. Turner, CIV.A. 03-2287-CM, 2007 WL 38388, at

---

[11] See entries dated July 6, 10, and 11, 2012. Dkt. No. 227-2, p. 15.

[12] See entries dates February 4, 2012; May 15, 2012; September 4, 10, and 26, 2012; and October 10, 2012. Dkt. No. 227-2, p. 12–13, 16–17.

19

*4 (D. Kan. Jan. 5, 2007) (surveying cases and finding that "[m]ost courts considering 47 U.S.C. § 605(e)(3)(B)(iii) have limited recoverable costs to taxable costs."); contra Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp. 2d 59, 66–67 (E.D.N.Y. 2006) (surveying cases, statutes, and legislative history and finding that "[w]hile the term, 'full costs,' is not defined in the statute, both the plain meaning of the statutory language and the legislative history of §605(e)(3)(B)(iii) suggest that this term was intended to include expenses other than 'taxable costs.'")

I find the Autar court's analysis of "full costs" under § 605 to be the more persuasive in this case. There, the court considered the six listed expenses that are included in "taxable costs" under 28 U.S.C. § 1920 and noted that:

> Attorneys' fees are not on the list; therefore, 'taxable costs' do not include attorneys' fees. However, § 605(e)(3)(B)(iii) implies that 'full costs' include 'reasonable attorneys' fees.' Therefore, the 'full costs' permitted under §605(e)(3)(B)(iii) both differ from, and can exceed, the 'taxable costs' recoverable under 28 U.S.C. § 1920.

Id. at 59. Given the language "full costs" and DIRECTV's significant success in the litigation, the Court finds that DIRECTV's costs for travel, conference call expenses, shipping, postage, and copies should be awarded.[13]

### 10. Reduction of the Lodestar Figure to Account for Unsuccessful Claims

The second step in the McAfee attorneys' fees analysis directs that the Court subtract fees for hours spent on unsuccessful claims that are unrelated to successful claims. McAfee, 738 F.3d

---

[13] The Coley Defendants also argue that legal research is not compensable as a cost in this action. In its reply brief, DIRECTV responded that it believes legal research is better categorized as a component of attorneys' fees. This Court has previously found that costs for computerized legal research, "are more properly characterized as a component of attorneys' fees, and are not taxable as costs under 28 U.S.C. § 1920." Centennial Broad., LLC v. Burns, CIV.A. 6:06CV006, 2007 WL 1839736, at *2 (W.D. Va. June 22, 2007) (citing United States v. Merritt Meridian Constr. Corp., 95 F.3d 153, 173 (2d Cir. 1996)). See also Jones v. Unisys Corp., 54 F.3d 624, 633 (10th Cir. 1995); Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago, 38 F.3d 1429, 1440–41 (7th Cir. 1994); Leftwich v. Harris–Stowe State Coll., 702 F.2d 686, 695 (8th Cir. 1983). Thus, the Court will treat the legal research charges in the costs section of the fee petition as attorneys' fees and, finding them to be reasonable, will award them as submitted.

at 88.  The Coley Defendants argue that a reduction is appropriate in this case for entries relating to Counts II, III, IV and V of the Amended Complaint, which were voluntarily dismissed after DIRECTV was awarded judgment against the Coley Defendants on its FCA claim. Dkt. No. 226.

Pursuant to the language in the stipulated dismissal of Counts II–V (Dkt. No. 226), DIRECTV is not entitled to recover fees relating solely to Counts II–V of the Amended Complaint.  The Coley Defendants point to no specific time entries in DIRECTV's bills that are directed at Counts II–V, and DIRECTV asserts that aside from drafting the Amended Complaint, it took no actions during this litigation that was directed only at Counts II–V.  Rather, the evidence developed to prove those counts was the same as the evidence used to prevail on the FCA claim in Count I.

The Supreme Court's statement in <u>Hensley v. Eckerhart</u> is instructive here:

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 434–35.  Accordingly, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."  <u>Id.</u> at 435.   Having reviewed the records, I find no entries of time relating solely to Counts II–V of the Amended Complaint.  Rather, all of the counts asserted by DIRECTV against the Coley Defendants were related to the prevailing FCA claim, and all of the claims related to the same set of operative facts involved in this action.  Further, DIRECTV's hours expended in litigation were reasonable, its overall relief obtained was significant, and the Court does not view voluntary dismissal by stipulation of four counts after

obtaining a large judgment and a permanent injunction as resulting in "unsuccessful claims."

The Court will not reduce the fee award based on these grounds.

### 11. Failure to Achieve the Result Sought in the Complaint

Finally, the Coley Defendants argue that a reduction to the fee award is appropriate under the third step of the <u>McAfee</u> analysis, which awards a percentage of the requested amount based on the amount of success plaintiff's claims enjoyed, because DIRECTV achieved a "small fraction" of the recovery sought in its Amended Cross-Claim and Third-Party Complaint. This argument is not well-taken. Though DIRECTV sought the maximum statutory damages permitted in the Amended Complaint (Dkt. No. 127), DIRECTV opted to pursue the statutory minimum amount of damages so as to have judgment entered and to dispense with the matter. Dkt. No. 215. DIRECTV received a damages award of over two million dollars, beyond what it believed it could collect from defendants, plus pre and post-judgment interest, anticipated attorneys' fees, as well as a permanent injunction against the Coley Defendants. The Court finds that this constitutes a full recovery against these defendants. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . this will encompass all hours reasonably expended on the litigation . . . ." <u>Hensley</u>, 461 U.S. at 435. Thus, the Court will not reduce DIRECTV's attorneys' fee award for failure to achieve the result sought.

### CONCLUSION

For the foregoing reasons, I hereby **RECOMMEND** that DIRECTV's Motion for Attorneys' Fees be **GRANTED**, and DIRECTV be awarded attorneys' fees and expenses in the amount of **$236,013.85.**[14]

---

[14] The calculations of the fee award are attached as Exhibit A.

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Entered: August 15, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

## Exhibit A

Yarmuth Wilsdon

| Timekeeper | Hours Billed | Hourly Rate | Total |
|---|---|---|---|
| John Jamnback | 562.3 – 14.7= 547.6 | $350 | $191,660 |
| Jeremy Roller | 32.4 | $350 | $11,340 |
| Scott Wilsdon | 51.6 | $350 | $18,060 |
| Nathan Bays | 57.5 | $225 | $12,937.50 |
| Julia Woog | 46.5 | $225 | $10,462.50 |
| Michael Houck | 14.4 | $100 | $1,440 |
| Deborah Johnson | 26.4 | $100 | $2,640 |

Total: $248,540

+ Legal Research Costs: $14,607.82

= $263,147.82

*.85 (15% reduction)

= $223,675.64

+ Costs: $1,715.14

Yarmuth Wilsdon Total Award: **$225,390.78**

Williams Mullen

| Timekeeper | Hours Billed | Hourly Rate | Total |
|---|---|---|---|
| Robert Burger | 8.7 | $350 | $3,045 |
| Joseph Mayes | 8.4 | $350 | $2,940 |
| Craig Mytelka | 1.3 | $350 | $455 |
| Robert Travers, IV | 10.9 | $350 | $3815 |

Total: $10,255.00

+ Costs: $368.07

Williams Mullen Total Award: **$10,623.07**


**DIRECTV TOTAL AWARD: $236,013.85**