## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division
### Civil Action No.:  5:11-cv-00048-MFU

| | |
|---|---|
| Sky Cable, LLC, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Randy Coley, et al. | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT RANDY COLEY'S RESPONSE IN OPPOSITION TO DIRECTV'S MOTION FOR SUPPLEMENTAL PROCEEDING TO DETERMINE WHETHER ASSETS CONTROLLED BY JUDGMENT DEBTOR RANDY COLEY ARE SUBJECT TO THE JUDGMENT

Defendant Randy P. Coley, by and through counsel, and submits the following brief in response and opposition to DIRECTV LLC's Motion for Supplemental Proceeding to Determine Whether Assets Controlled by Judgment Debtor Randy Coley are Subject to the Judgment, ("DirecTV's Motion," or "Motion") in this matter.

### STATEMENT OF THE CASE

This case is before the Court pursuant to post-judgment proceedings initiated by DirecTV against Randy Coley ("Mr. Coley"). On January 23, 2014, this Court entered judgment against Coley on DirecTV's cross-claims (ECF No. 220). Pursuant to this judgment, DIRECTV LLC ("DIRECTV") requests that this Court disregard statutes that bar the requested relief, concoct legal remedies that are not authorized under the controlling law, and violate the due process rights of several corporate entities not before the Court. The Motion should accordingly be denied.

## STATEMENT OF THE FACTS

Mr. Coley has been a member of two limited liability companies called Its Thundertime LLC. (Declaration of Randy Coley ("Coley Decl.") ¶ 2.) One of these limited liability companies ("LLCs") was incorporated in North Carolina (hereafter "Its Thundertime LLC (NC)"), and the other was incorporated in Delaware (hereafter "Its Thundertime LLC (DE)"). (Coley Decl. ¶ 2.)

The Articles of Incorporation for Its Thundertime LLC (NC) (Coley Decl. Ex. 1) were filed with the North Carolina Secretary of State on December 20, 2011. (Coley Decl. ¶ 3.) The Articles of Dissolution for Its Thundertime LLC (NC) (copy attached as Exhibit 2) were filed with the North Carolina Secretary of State on February 13, 2015. (Coley Decl. ¶ 4.) Its Thundertime LLC (NC) was a single member limited liability company ("LLC"). (Coley Decl. ¶ 5.) Mr. Coley was the sole member and manager of Its Thundertime LLC (NC). (Coley Decl. ¶ 5.)

The Certificate of Formation for Its Thundertime LLC (DE) was filed with the Delaware Secretary of State on April 10, 2008. (Coley Decl. Ex. 3.)   Its Thundertime LLC (DE) has two members: Kimberli Coley and Randy Coley. (Coley Decl. ¶ 7.) Its Thundertime LLC (DE) applied for a certificate of authority to do business in North Carolina on March 2, 2015. (Coley Decl. Ex. 3.)

Its Thundertime LLC (NC) was formed to manage the properties in Its Thundertime LLC (DE). (Coley Decl. ¶ 9.) Its Thundertime LLC (NC) was later dissolved on February 13, 2015. (Coley Decl. ¶ 9.)

The purpose for forming Its Thundertime LLC (DE) was to own the rental properties that the Coleys contributed to Its Thundertime LLC (DE) in return for 50% membership interests.

(Coley Decl. ¶ 18.) At the time that the Coleys formed Its Thundertime LLC (DE), no litigation had been filed or threatened against the Coleys by DIRECTV. (Coley Decl. ¶ 19.)

Its Thundertime LLC (DE) has never been in any business relationship with DIRECTV LLC. (Coley Decl. ¶ 20.) Its Thundertime LLC (DE) is unrelated to the facts and circumstances of the civil action *Sky Cable LLC, et al. v. Coley, et al.*, No. 5:11-cv-48 (W.D. Va.), or other cases consolidated with *Sky Cable, LLC*. (Coley Decl. ¶ 21; Compl., ECF No. 1)

## ARGUMENT

### I.     DIRECTV's requested relief would violate Its Thundertime's, East Coast Sales's, and South Raleigh Air's Due Process Rights.

DIRECTV's requested injunctive relief would deny the due process rights of Its Thundertime LLC (DE), South Raleigh Air LLC, and East Coast Sales USA LLC (collectively the "LLC Entities").  The LLC Entities are not parties before this Court. None are named in the Complaint and none have been subjected to process. DIRECTV cannot seek recovery against the LLC Entities without filing an action against them and subjecting them to process as required by the Federal Rules of Civil Procedure and constitutional due process principles.

"[D]ue process requires that where a court considers piercing the corporate veil, the parties must be provided with an opportunity to contest such an action." *EEOC v. Upper Mill Mining Co.*, 1997 U.S. Dist. LEXIS 24225, *10 (W.D. Va. Oct. 22, 1997).   In *Upper Mill*, the EEOC obtained a judgment against Upper Mill Mining Company ("Upper Mill"). *Id.* at *1-2.  In effort to collect on the judgment, as it remained unpaid by Upper Mill, the EEOC asserted that "that [Gary] Horn is the alter ego of all of his companies and that therefore, the corporate veil should be pierced and Horn held personally liable for the judgment against Upper Mill." *Id.* at 10-11.  Gary Horn was "the sole shareholder and chief executive officer of six coal mining companies including the defendant corporation." *Id.* at 2.  The Court held that "where a court

considers piercing the corporate veil, **the parties much be provided with an opportunity to contest such an action.**" *Id.* 10-11 (emphasis added).  The Court further observed that, "[t]o entertain the EEOC's motion to pierce the corporate veil at this time, and to attach liability to Horn without a trial, would effectively deny him his due process right to defend himself and to contest his liability." *Id*. at *10.

*Upper Mill* observed that "[i]t is well established that a corporation is a legal entity separate and distinct from its shareholders. A fundamental purpose of incorporation is to 'enable a group of persons to limit their liability in a joint venture to the extent of their contributions to the capital stock.'"  *Id.* at 11 (quoting *Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 547-48 (4th Cir. 1992)) (internal quotations omitted).  Based on those fundamental purposes, "[t]he decision to pierce a corporate veil and expose those behind the corporation to liability is one that is to be taken reluctantly and cautiously . . . and only in 'extraordinary' cases." *Upper Mill*, 1997 U.S. Dist. LEXIS 2422, *12 (quoting *In re County Green Ltd. Partnership*, 604 F.2d 289, 292 (4th Cir. 1979), and *Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 548 (4th Cir. 1992)).

In order to assert personal jurisdiction, a party must be named in a complaint and procedural due process requirements must be satisfied. *See Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999); *see also Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 502 (D. Del. 2003) (requiring due process and personal jurisdiction over the corporate defendant to pierce the corporate veil).  For a foreign corporation to be subject to personal jurisdiction, the court's exercise of personal jurisdiction must "comport with traditional notions of 'fair play and substantial justice.'" *Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 479 (4th Cir. 1993) (quoting *In World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)).  Additionally, the court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

DIRECTV's motion seeks to shortcut these well-established principles of law.  There exists no legal basis for bringing such "supplemental proceedings" against the LLC Entities. Tellingly, DIRECTV cites no authority for such an *ad hoc* proceeding outside the framework for subjecting a party to judicial process. *See, e.g.*, Fed. R. Civ. P. 2, 3, & 4.

The judgment in this matter is not against the LLC Entities. DIRECTV asserts no authority, other than claiming the LLC Entities are alter egos of Mr. Coley, for seizing assets from them to satisfy the judgment against Mr. Coley. DIRECTV argues, without citation to any legal authority, that because these entities are alter egos of Mr. Coley, they are already in effect before the Court pursuant to the jurisdiction that this Court exercises over Mr. Coley. (*See* Motion, ECF Docket Entry No. 271, at 19-20.) Plainly, however, such a procedural novelty assumes the result that DIRECTV asks the Court to reach. One cannot put the proverbial cart before the horse by declaring that *because* they are "alter-egos" of each other (based on cherry-picked case law from various other jurisdictions which are not controlling), the Court *already* has jurisdiction over them for purposes of determining whether such injunctive relief against them is appropriate. The above legal principles foreclose DIRECTV's invitation to such baseless procedural novelty.

Instead, the first step must be to afford the LLC Entities their due process rights. Fed. R. Civ. P. 4; *EEOC v. Upper Mill Mining Co.*, *supra*. Only after that can the Court address the

substantive question as to whether it may reverse-pierce their corporate veils. Among a myriad of procedural problems that would arise from bypassing the LLC Entities' procedural rights would be who represents them as counsel and how they would appeal an adverse decision if they are not parties before the Court. Even these most basic of questions demonstrate the importance of due process at a practical, as well as constitutional, level.

Accordingly, DIRECTV's Motion should be denied.

## II.    The Court Must Apply Delaware Law to Determine Whether DIRECTV May Reverse Pierce The Corporate Veil.

Assuming *arguendo* that DIRECTV could seek its requested relief without subjecting the LLC Entities to judicial process as required under the Federal Rules of Civil Procedure, DIRECTV has ignored another essential step: ascertaining what law governs the substantive question as to whether the requested relief is authorized by law. As detailed below, this choice-of-law question must also be resolved against DIRECTV.

In Virginia, it is well-settled that the law of the state of incorporation or organization controls the question of whether one may pierce the corporate veil.  As such, DIRECTV's citation to Virginia authority (and a number of jurisdictions other than Delaware) in its Motion for Supplemental Proceeding (ECF No. 271), at pp. 14-16, is completely misplaced.

"As a general proposition, the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation." *United States v. Kolon Indus., Inc.*, 926 F. Supp. 2d 794, 814 (E.D. Va. 2013) (Payne, J.).  "**Under Virginia law, the law of the state of incorporation determines whether the corporate veil may be pierced**." *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 359 F. Supp. 2d 497, 501 n.6 (E.D. Va. 2005) (Ellis, J.) (emphasis added); *see also Jones v. Bank of Am. Corp.*, 2010 U.S. Dist. LEXIS 142918, at *34-35 (E.D. Va. Aug. 24, 2010) (Stillman, J.) (internal citations omitted) (applying New York law to

determine whether to pierce the corporate veil because Countrywide was incorporated in New York); *Brainware, Inc. v. Scan-Optics, Ltd.*, 2012 U.S. Dist. LEXIS 77337, at *15 (E.D. Va. May 9, 2012) (Novak, J.) (applying English law to determine whether to pierce the corporate veil because Scan-Optics is an English corporation); *McCarthy v. Giron*, 2014 U.S. Dist. LEXIS 79007, at *30 (E.D. Va. June 6, 2014) (Lee, J.) ("Virginia's choice of law principles dictate that the law of the state of incorporation determines whether a corporate veil may be pierced."); *DirecTV Latin America, LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 432 n. 8 (S.D.N.Y. 2010) (noting that Delaware law would apply to attempts to pierce the corporate veil of a Delaware limited liability company); *Sovereign Bank v. ACG II, LLC*, No. 08cv1600, 2010 WL 363336, 2010 U.S. Dist. LEXIS 6109, at *15 (D. Conn. Jan. 25, 2010) (holding that the law of the state of incorporation governs a veil-piercing inquiry, that Delaware law applied to an attempt to pierce the corporate veil of a Delaware LLC, and dismissing veil piercing claims because of failure to allege fraudulent purpose or abuse of corporate form beyond the torts and contract claims in the complaint).

Here, DIRECTV primarily seeks to collect its judgment from Its Thundertime LLC (DE), a limited liability company organized under the laws of Delaware.[1] (Coley Decl. ¶ 6 and accompanying Ex. 3.) Since DIRECTV seeks to collect its judgment from the assets of Its Thundertime LLC (DE), an inquiry into whether it may reverse pierce the corporate veil necessarily requires an analysis of Delaware law. Virginia corporate law is simply inapposite.

---

[1] South Raleigh Air LLC is merely a management entity (Coley Decl. ¶ 32) and East Coast Sales USA LLC operates a trailer dealership (Coley Decl. ¶ 25). DIRECTV is primarily seeking real property owned by Its Thundertime LLC (DE).

III.    **If the LLC Entities are Subject to the Jurisdiction of this Court, a Charging Order is the Proper Remedy Under Delaware Law.**

A.  **DIRECTV's Motion disregards 6 Del. Code § 18-703.**

As stated above, Delaware law applies in this case as to issues regarding reverse veil piercing.  Pursuant to Delaware law, the remedy that DIRECTV has against the LLC Entities is limited to a charging order as to distributions from the LLC Entities to Mr. Coley.

> On application by a judgment creditor of a member or of a member's assignee, a court having jurisdiction may charge the limited liability company interest of the judgment debtor to satisfy the judgment. To the extent so charged, **the judgment creditor has only the right to receive any distribution or distributions to which the judgment debtor would otherwise have been entitled** in respect of such limited liability company interest.

6 Del. Code § 18-703(a) (emphasis added).  The code section further provides the following important provision:

> The entry of a **charging order** is the **exclusive remedy by which a judgment creditor** of a member or a member's **assignee may satisfy a judgment out of the judgment debtor's limited liability company interest** and attachment, garnishment, foreclosure or other legal or equitable remedies are not available to the judgment creditor, whether the limited liability company has 1 member or more than 1 member.

*Id.* § 18-703(d) (emphasis added).

Under 6 Del. Code § 18-703, a charging order is DIRECTV's "exclusive remedy" with respect to Its Thundertime LLC (DE) and does not extend to the assets of the LLC Entities. DIRECTV invites this Court to write new Delaware law and disregard the plain meaning of 6 Del. Code § 18-703. Such invitation should be rejected as contrary to the controlling law. DIRECTV's Motion must therefore be denied.

B.  **Delaware law does not recognize the remedy sought by DIRECTV.**

In addition to disregarding 6 Del. Code § 18-703, DIRECTV also side-steps the fact that Delaware appellate courts have never recognized the remedy that it seeks: to reverse-pierce the

corporate veils of Its Thundertime LLC (DE), South Raleigh Air LLC, and East Coast Sales USA LLC. Instead, DIRECTV invites this Court to cherry-pick cases from other jurisdictions that have recognized the novel remedy of reverse-piercing the corporate veil and create new Delaware law from such decisions based on other corporate law frameworks. This Court should decline that invitation.

Reverse piercing the corporate veil means to hold a corporate entity liable for the liabilities of the corporate entity's owner. This unusual, and far from universally recognized, type of equitable relief is the reverse of traditional piercing of the corporate veil, which is holding a corporate entity's owner liable for the liabilities of the corporate entity. Traditional veil piercing is recognized under Delaware corporate law. Reverse piercing is not.

DIRECTV incorrectly asserts that the LLC Entities may be subject to reverse-veil piercing. In support of its assertion, it cites two Delaware cases (among other cases not applying Delaware law), neither of which address reverse-piercing. (*See* Direct TV Motion, ECF No. 271, at 15, n. 9 (quoting *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) (citing only veil piercing factors and <u>not</u> addressing a reverse veil-piercing question); *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063 at *3 (Del. Ch. 2008) (unpublished) (same).)

The only law cited by DIRECTV in support of its argument on reverse veil-piercing pertains to jurisdictions other than Delaware and is therefore inapplicable. Case law of other jurisdictions and cursory citation to traditional veil-piercing case law cannot justify its position. "Reverse pierce claims <u>implicate different policies</u> and require a <u>different analytical framework</u> from the more routine corporate creditor veil-piercing attempts." *CanCan Dev., LLC v. Manno*, 2015 Del. Ch. LEXIS 144, *66 (Del. Ch. May 27, 2015) (emphasis added). To the contrary:

**Not only has Delaware never accepted reverse piercing**, but the general tenor of Delaware corporate law suggests its acceptance would be **doubtful**. Delaware has an exceptionally strong policy of respecting the corporate form. *Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 769 (Del Ch.), *aff'd without op.*, 976 A.2d 170 (Del. 2009); *see also Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*, 493 F.3d 345, 371 (3d Cir. 2007) (calling this "a bedrock principle of corporate law in Delaware"); *Case Fin.*, 2009 Del. Ch. LEXIS 153, 2009 WL 2581873, at *4 (declaring that "Delaware courts take the corporate form and corporate formalities very seriously"). "The courts of Delaware" therefore "do not easily pierce the corporate veil," even when the piercing claim is a conventional one. *In re Phillips Petroleum Sec. Litig.*, 738 F. Supp. 825, 838 (D. Del. 1990); *see also Wallace*, 752 A.2d at 1183 (noting that convincing a Delaware court to pierce the corporate veil is "a difficult task" (internal quotation omitted)). Reverse piercing, a step beyond the conventional, would cut against the grain of what has rightly been called "[t]he conservative nature of Delaware veil-piercing law." *Presser*, *supra*, § 2:8 at 211 n.1.

The piercing claim here requires this court to predict how the Delaware Supreme Court would rule, faced not only with a claim for reverse piercing but for inside reverse piercing. *See Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 646 F.3d 487, 490 (7th Cir. 2011); *Lewis v. Methodist Hosp., Inc.*, 326 F.3d 851, 853 (7th Cir. 2003); *Home Valu, Inc. v. Pep Boys - Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000). When prediction is difficult or impossible, however, **a federal court should hesitate before venturing beyond the frontiers of established state law**, *J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1034 (7th Cir. 2005); *King v. Damiron Corp.*, 113 F.3d 93, 97 (7th Cir. 1997), **and in the absence of guidance should generally adopt an interpretation that restricts liability rather than expands it**, *Home Valu*, 213 F.3d at 965; *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994).

*ALT Hotel, LLC v. Diamondrock Allerton Owner, LLC (In re ALT Hotel, LLC)*, 479 B.R. 781, 802-03 (Bankr. N.D. Ill. 2012) (emphasis added). The inappropriateness of creating a reverse-piercing remedy for Delaware is further underscored by the Delaware legislature's statute on point, 6 Del. Code § 18-703, as discussed above.

DIRECTV has not cited to <u>any</u> governing law (i.e., Delaware appellate case law or statute) in support of its argument for reverse veil piercing.  This Court should not create a

remedy that Delaware law does not recognize.   Accordingly, DIRECTV's Motion should be denied.

**IV.     In the Alternative, If the Court Holds that Virginia Law Applies, the Relief Sought by DirecTV Should be Denied.**

Assuming *arguendo* that reverse veil-piercing is an allowable remedy in this case, DIRECTV's Motion should still be denied. Based on the facts before the Court, DIRECTV has fallen fall short of the showing required to reverse-pierce the corporate veil. This issue will be analyzed below under Virginia law (given that DIRECTV cites Virginia corporate law in support of its argument on pages 14-16 of its Motion), and analogous Delaware case law on the traditional veil-piercing remedy (which, as stated above, is <u>not</u> the remedy that DIRECTV seeks).

"In Virginia, unlike in some states, the standards for veil piercing are very stringent, and piercing is an *extraordinary measure* that is permitted only in the most egregious circumstances." *Oliver v. Omega Protein, Inc.*, 2011 U.S. Dist. LEXIS 27621, at *16 (E.D. Va. Jan. 31, 2011) (unpublished) (emphasis in original). "A court can pierce the corporate veil only upon a showing that (1) the corporation was the 'alter ego, alias, stooge, or dummy' of the other entity; and (2) the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." *Id.* at *13-14.

Delaware applies the following test for a traditional veil-piercing inquiry:

> (1) Whether the company . . . was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the controlling shareholder. There also must be an element of fraud to justify piercing the corporate veil.

*Case Fin. v. Alden*, 2009 Del. Ch. LEXIS 153, at *13-14 (Del Ch. Aug. 21, 2009) (unpublished). "Delaware courts take the corporate form and corporate formalities very seriously[.]" *Id.* at *13. Delaware courts "will disregard the corporate form only in 'the exceptional case.'" *Id.*

DIRECTV invites this Court to presume, without citation to evidence, that the LLC Entities were incorporated in order to "evade a personal obligation," "perpetuate a fraud," "commit an injustice," and "gain an unfair advantage." (Motion, ECF No. 271, at 16.) DIRECTV does not explain why an LLC that was incorporated in 2008 was formed for the purpose of allegedly evading an obligation when this above-captioned lawsuit was not even filed until 2011. Instead, DIRECTV skips to the other typical factors that are relevant to traditional veil-piercing inquiries, such as an alleged "[f]ailure to maintain records," "[c]ommingling the assets of separate entities," and the like. (Motion, ECF No. 271, at 16-19.) DIRECTV applies these traditional veil-piercing inquiries to *current* operations of the LLC Entities, not the reasons for which the LLC Entities were formed and how assets were contributed to them. DIRECTV's analysis of these factors is also deficient and will be addressed below. However, DIRECTV's analysis also fails to meet the touchstone, and required, element for veil-piercing: that the "corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." *Oliver*, 2011 U.S. Dist. LEXIS 27621 at *13-14 (Va. corporate law); *accord Case Fin.*, 2009 Del. Ch. LEXIS 153, at *14 (Del. corporate law).

The primary assets that DIRECTV targets are the real properties in Its Thundertime LLC (DE).[1] However, it is undisputed that Its Thundertime LLC (DE) was incorporated under the laws of the State of Delaware on April 10, 2008. (Coley Decl. ¶ 6 and Ex. 3; Jamnback Decl. Ex. 11.) East Coast Sales USA LLC was incorporated under the laws of the State of Delaware on

---

[2] *See supra* note 1.

12

April 24, 2008. (Coley Decl. ¶ 23.) This civil action was filed on June 9, 2011 (ECF No. 1), and DIRECTV's cross-claim against Mr. Coley was filed on December 14, 2011 (ECF No. 66).

DIRECTV proffers no evidence or explanation, and cannot do so, as to why Its Thundertime LLC (DE) and East Coast Sales USA LLC were formed and capitalized to evade liability to DIRECTV. Indeed, they were not. (Coley Decl. ¶¶ 6, 12-13, 18-19, and accompanying Ex. 5-6; Fearon Decl. ¶¶ 2-5.) Its Thundertime LLC (DE) was formed for the purpose of holding the rental properties that Randy and Kimberli Coley contributed to Its Thundertime LLC (DE) in return for 50% membership interests. (Coley Decl. ¶¶ 7, 16-17, and Ex. 3; Fearon Decl. ¶¶ 5-6.) The Coleys did so on the advice of counsel and pursuant to the standard and responsible approach to ownership of properties rented by third parties. (Coley Decl. ¶¶ 18; Fearon Decl. ¶¶ 3-6.) None of the parties to this lawsuit had even threatened litigation against the Coleys when Its Thundertime LLC (DE) and East Coast Sales USA LLC were formed. (Coley Decl. ¶¶ 19.)

The obvious discrepancy between the dates that these LLCs were formed and when litigation commenced against the Coleys years later underscores why DIRECTV cannot explain how the formation and capitalization of these LLCs was pursuant to fraudulent design. DIRECTV substitutes animosity against Mr. Coley for a careful analysis of the second element for piercing the corporate veil under *Oliver*, *supra*, which is connecting the alleged corporate problems to a fraudulent design that must be unwound through the veil-piercing remedy. But such assertions cannot take the place of the more precise question that is involved in the "extraordinary measure" of piercing the corporate veil. *See Oliver*, 2011 U.S. Dist. LEXIS 27621, at *16. That question involves whether the highly unusual step of eviscerating the corporate entity is warranted because the corporate entity is used *for the purpose* of effectuating

a fraud. *Id.* At *13-14. And if DIRECTV has no such evidence to satisfy the requirement that "the corporation was a *device or sham used* to disguise wrongs, obscure fraud, or conceal crime," *id.* at *14 (emphasis added), then its veil-piercing remedy cannot be granted. *See id.* at *17-18 (motion to dismiss should be granted where second element is not satisfied); *accord C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 266 Va. 3, 10, 580 S.E.2d 806, 809-10 (2003).

Neither Its Thundertime LLC (DE) nor East Coast Sales USA LLC had or has any such purpose. Indeed, the undisputed facts before the Court show otherwise. Neither Its Thundertime LLC (DE) nor East Coast Sales USA LLC was named in this or any related litigation and has no connection to the facts of the above-captioned case, which concerned a complicated issue regarding the ownership and operation of a cable company owned by East Coast Cablevision LLC. (*See, e.g.*, Compl., ECF No. 1.) Neither Its Thundertime LLC (DE) nor East Coast Sales USA LLC has had any contractual or other relationship with DIRECTV. (Coley Decl. ¶¶ 20-21, 26-27.) There is, therefore, no basis to find that either LLC, or indeed any of the LLC Entities, "was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." *See Oliver*, 2011 U.S. Dist. LEXIS 27621, at *13-14.

To disregard this essential part of the inquiry (connecting the alleged "fraud" to the formation of the corporate entity at issue) would effectively eviscerate the corporate veil. The entire purpose of the legislature's decision to grant corporate limited liability is to provide liability protection. *Cf. Case Fin. v. Alden*, 2009 Del. Ch. LEXIS 153, at *13-14. DIRECTV in effect invites the Court to conclude that *whenever* a liability is not being paid, that inaction is itself a fraudulent and "inequitable" act, thus authorizing a veil piercing (or, here, a reverse veil piercing and total disregard of 6 Del. Code § 18-703). There is no question that veil-piercing inquiries are fact-specific, and no single criterion is dispositive (*e.g.*, *C.F. Trust, Inc.*, 266 Va. at

10). However, DIRECTV's Motion seeks to turn this flexibility into a broad license to "do justice" without regard to statute or clear rule (or even jurisdictional boundary, as evidenced by the large number of jurisdictions from which DIRECTV's Motion freely borrows).[1] A more careful analysis of the applicable law does not authorize such *ad hoc* relief.

Moreover, the other elements of traditional veil-piercing (again, not the remedy that DIRECTV seeks) that DIRECTV does analyze do not merit the highly unusual remedy of piercing the corporate veil. (Motion, ECF No. 271, at 16-19.) These elements will be addressed in sequence. These elements must be analyzed with careful consideration of the heightened standard mandated for a reverse veil piercing inquiry. "[A] litigant who seeks reverse veil piercing must prove the necessary standards by clear and convincing evidence." *C.F. Trust*, 266 Va. at 12-13.

The following analysis will be organized based on the well-established factors for traditional veil-piercing under Delaware law, which has a slightly different framework from Virginia (see above). Virginia's two-prong test simply requires connecting the facts at issue to an alleged fraud that must be remedied by a veil piercing. *See C.F. Trust*, 266 Va. at 10. Thus, the analysis under Virginia law simply involves ascertaining whether that connection exists for each issue to be addressed, which is essentially the same as the Delaware rule that there be a finding of fraud that requires veil piercing.[2]

---

[3] DIRECTV notes the Delaware veil-piercing standard in footnote 9 of its brief but does not otherwise discuss or apply it.

[4] As stated previously, Virginia corporate law does not apply to this Motion. Delaware corporate law applies, but Delaware does not recognize reverse veil piercing. Therefore, this Court need not reach the issues addressed in this section to deny the Motion. This section is presented out of an abundance of caution and to ensure a more complete record.

**(1) "Whether the company was adequately capitalized for the undertaking"**

This criterion is an example of how, under Delaware law, the veil-piercing standard cannot simply be refashioned in an *ad hoc* manner into a reverse veil-piercing rule. There is no question that Its Thundertime LLC (DE) and East Coast Sales USA LLC are adequately capitalized and are functioning businesses (*see generally* Coley Decl.), but these corporate entities are not debtors or defendants in this case. DIRECTV has never been in a contractual relationship with either Its Thundertime LLC (DE) or East Coast Sales USA LLC, and neither had any "undertaking" with respect to the issues involved in the underlying lawsuit. (Coley Decl. ¶¶ 20-21, 26-27.)

The first criterion under the Delaware veil-piercing inquiry is therefore irrelevant and merely underscores the lack of a legal basis for DIRECTV's Motion. It makes no sense to evaluate whether the corporate entity is adequately "capitalized" to determine whether the corporate entity should be reverse-pierced and held liable for its owner's debts. This factor is likewise irrelevant under the Virginia corporate law standard.

**(2) "Whether the company was solvent"**

This second criterion of the Delaware veil-piercing test also highlights the fact that the Delaware veil-piercing test cannot simply be inverted or refashioned into a reverse veil-piercing test. Whether Its Thundertime LLC (DE) and East Coast Sales USA LLC are solvent (they are, so this factor would weigh against DIRECTV) makes no sense to a reverse veil-piercing inquiry, which is focused on whether the company's corporate veil should be reverse-pierced in order to hold the company liable for its owner's debts.

Again, because Delaware has not recognized reverse veil-piercing, there is not even a legal test that this Court could apply to DIRECTV's Motion without creating law for Delaware.

Under Virginia's formula, this criterion is also not relevant.

### (3) "Whether corporate formalities were observed"

This third factor under Delaware law pertains to the first two subsections of DIRECTV's discussion, which are entitled "[f]ailure to maintain records" and "[c]ommingling the assets of separate entities." (Motion, ECF No. 271, at 16-18.)

First, DIRECTV contends that "Mr. Coley does not document the actions of each of his entities, nor account for the regular commingling of funds between these entities." (Motion, ECF No. 271, at 16.) This blanket accusation is incorrect. It is true that Its Thundertime LLC (DE) regularly disburses funds to East Coast Sales USA LLC. (Coley Decl. ¶ 29.) However, these disbursements are duly authorized distributions from Its Thundertime LLC (DE) to an entity controlled by the members of Its Thundertime LLC (DE). (Coley Decl. ¶¶ 28-29, 33.) The Coleys own these entities, and there is no reason proffered by DIRECTV as to why such distributions further a fraudulent scheme or design. (*See* Motion, ECF No. 271, at 16.) Certainly, mere reference to an assigned distribution to East Coast Sales USA LLC without any analysis of how it affects the touchstone inquiry of a reverse veil piercing falls far short of the "clear and convincing evidence" standard. *C.F. Trust*, 266 Va. at 12-13.

DIRECTV implies that an assignment of a distribution to another LLC with the same ownership is a serious infraction that can subject the two entities to being declared one and the same. This suggestion wholly disregards the extraordinariness of the veil-piercing remedy. As the Virginia Supreme Court has stated, in interpreting Virginia corporate law, "This Court has been very reluctant to permit veil piercing." *C.F. Trust*, 580 S.E.2d at 810; *accord Case Fin.*, 2009 Del. Ch. LEXIS 153, at *13 ("Delaware courts take the corporate form and corporate formalities very seriously" and allow traditional veil piercing "only in the 'exceptional case'").

17

If privately held limited liability companies, and frankly most publicly held companies, were held to such a standard for routine flows of working capital at pain of their corporate forms being disregarded, few of them would survive a veil-piercing inquiry. Such is the obvious purpose of the rule that "only 'an extraordinary exception' justifies disregarding the corporate entity and piercing the corporate veil" that is provided by state statute. *C.F. Trust*, *supra.* And further, DIRECTV must articulate why occasional disbursements from Its Thundertime LLC to East Coast Sales LLC are a fraud. It has not, and cannot, do so. DIRECTV's observations are certainly not sufficient to meet the clear and convincing evidence standard, *C.F. Trust*, 266 Va. at 12-13, or the heavy presumption against interfering with the corporate form, *Case Fin.*, 2009 Del. Ch. LEXIS 153, at *13).

DIRECTV also contends that East Coast Sales USA LLC, South Raleigh Air LLC, and Its Thundertime LLC (DE) "are the same entity" and "are just different names Mr. Coley uses for various bank accounts." (Motion, ECF No. 271, at 17.) These assertions fail for the same reason. First, while there are flows of working capital between the LLC Entities, such flows are fully justifiable as either assignments of income or contributions of capital as needed for business purposes. (Coley Decl. ¶¶ 29-31, 33.) While DIRECTV quarrels with how the LLC Entities handle their working capital as affiliates, DIRECTV does not offer an explanation as to why such flows are a fraudulent scheme. (*See* Motion, ECF Np. 271, at 17-18.) Instead, DIRECTV quotes a few passages from the deposition of Mr. Coley in which he is being queried about various specific transactions and attempts to answer the reasons for specific intercompany capital flows. (Motion, ECF No. 271, at 17.) DIRECTV does not connect these deposition passages to why, for instance, payment of an expense of Its Thundertime LLC (DE) by South Raleigh Air LLC, which manages the properties for Its Thundertime LLC (DE) located on Airport Road in Fuquay-

Varina, North Carolina (Coley Decl. ¶ 32), perpetrates a fraud. None of these LLC Entities were named in the above-captioned lawsuit and are not subject to DIRECTV's judgment. (*See* ECF Nos. 1 and 220.) Mr. Coley, the judgment debtor, was not a party to any of the transactions mentioned in the "[c]ommingling the assets of separate entities" subsection on pages 17-18. Indeed, declaring Its Thundertime LLC (DE), South Raleigh Air LLC, and East Coast Sales USA LLC to be one entity would accomplish nothing for DIRECTV.

Accordingly, these intercompany transactions have no significant relevance to DIRECTV's request to reverse pierce the corporate veil.

### (4) "Whether the controlling shareholder siphoned company funds"

The fourth factor under Delaware law applies to DIRECTV's subsection titled "treating business assets as personal assets." (Motion, ECF No. 271, at 18.)

There are two issues in this subsection. The first concerns the Coleys' residence and vacation home. These are merely assets of the Coleys that, like other real estate, were contributed to Its Thundertime LLC (DE) long before the above-captioned litigation commenced. (Coley Decl. ¶ 16; *cf.* ECF No. 1.) DIRECTV has offered no explanation as to how this contribution of capital to Its Thundertime LLC (DE) was designed to defraud DIRECTV when the transaction occurred over three years before the above-captioned lawsuit commenced. Again, DIRECTV's position, if accepted, would amount to the conclusion that whenever a judgment is not satisfied, corporate forms may be pierced to satisfy the judgment. This is not the law.

DIRECTV's suggestion that the Coleys live in their home and use their vacation home rent-free cuts against its position. If the Coleys pay rent to Its Thundertime LLC (DE), that would constitute a capital outflow from the judgment debtor, not the other way around.

DIRECTV also suggests that the Coleys contributed their personal residence and second home to Its Thundertime LLC (DE) "to evade his obligations." (Motion, ECF No. 271, at 3.) This characterization of the 2008 transaction that contributed *all* of their real estate to Its Thundertime LLC (DE) disregards the fact that this civil action did not even commence until years later. It was an entirely reasonable and typical approach for individuals to own significant real estate holdings. *E.g.*, *In re 431 W. Ponce De Leon, LLC*, 515 B.R. 660, 664 (Bankr. N.D. Ga. 2014) (property held by individual in limited liability companies); *Julian v. Julian*, 2009 Del. Ch. LEXIS 164, *2, 2009 WL 2937121 (Del. Ch. Sept. 9, 2009) (unpublished).

Additionally, DIRECTV's hypothesis disregards the fact that North Carolina law, which applies to the property formerly held by the Coleys, provides that property held jointly by husband and wife cannot be attached by creditors of the husband. A married couple in North Carolina hold property as tenancy by the entireties unless an instrument specifically provides otherwise. N.C. Gen. Stat. § 39-13.6(b); *see Lawrence v. Lawrence*, 100 N.C. App. 1, 10, 13 (1990) (property conveyed to husband and wife creates a tenancy by the entireties). Property held as a tenancy by the entireties is exempt from the creditors of a single spouse. *Gas Light Co. v. Leggett*, 273 N.C. 547, 550, 161 S.E.2d 23 (1968).

"A husband and wife shall have an equal right to the control, use, possession, rents, income, and profits of real property held by them in tenancy by the entirety. Neither spouse may bargain, sell, lease, mortgage, transfer, convey or in any manner encumber any property so held without the written joinder of the other spouse." N.C. Gen. Stat. § 39-13.6(a).

There is no reason for the Coleys to have contributed these jointly held assets to Its Thundertime LLC (DE) for the purpose of evading creditors. Such property was already not subject to post-judgment enforcement. Accordingly, DIRECTV's conjecture fails both for lack

of evidence and because it makes no sense under North Carolina law. It has failed to establish that this analysis supports its reverse veil-piercing remedy, and certainly not by the heightened standards required for such remedies.

### (5) "Whether, in general, the company simply functioned as a façade for the controlling shareholder"

The fifth factor under Delaware law applies to DIRECTV's subsections titled "[o]verlapping and dominating ownership and control" and "[m]ultiple entities with the same office/address." (Motion, ECF No. 271, at 18.)

The issue of ownership of the LLC Entities is, without more, of minimal relevance. The mere fact that two or more entities have common ownership does not entitle the corporate veil to be pierced. *See, e.g.*, *Bravado Int'l Group Merch. Servs.*, 655 F. Supp. 2d 177, 196-97 (E.D.N.Y. 2009) (declining to pierce veil where plaintiff claimed, among other connections, that defendants had "a unity of interest and ownership"); *cf. Case Fin.*, 2009 Del. Ch. LEXIS 153, at *13 ("Delaware courts take the corporate form and corporate formalities very seriously"). Plainly, it is common for affiliated corporate groups to have an overarching unity of ownership, yet their corporate veils remain intact, as was the case in *Case Financial v. Alden*, 2009 Del. Ch. LEXIS 153 (Del. Ch. Aug. 21, 2009), and *Oliver v. Omega Protein, Inc.*, 2011 U.S. Dist. LEXIS 27621 (E.D. Va. Jan. 31, 2011).

The arguments under this factor are largely duplicative of issues already addressed. DIRECTV does not contend why common ownership of the LLC Entities perpetuates a fraud where the LLC Entities were not defendants, had no role in the issues involved in the above-captioned civil action, and (in the case of Its Thundertime LLC (DE) predated the lawsuit by over three years. Having multiple entities with the same address is not a factor that is of any

21

significance to a veil-piercing inquiry and is not mentioned in either the Delaware or the Virginia formulations of the veil-piercing remedy as quoted above.

**(6) Consideration of the effect veil-piercing would have on innocent parties**

The Virginia Supreme Court in *C.F. Trust* mandated consideration of the effect that the veil-piercing remedy would have on innocent parties:

> [A] court considering reverse veil piercing must weigh the impact of such action upon innocent investors…. A court considering reverse veil piercing must also consider the impact of such an act upon innocent secured and unsecured creditors. The court must also consider the availability of other remedies the creditor may pursue. And, a litigant who seeks reverse veil piercing must prove the necessary standards by clear and convincing evidence.

*C.F. Trust*, 266 Va. at 12-13.

Consideration of other third parties is also relevant under Delaware law, given the importance of equitable analysis to the veil-piercing inquiry. *E.g.*, *Alden, supra.* The issue pertains to the last two subsections of DIRECTV's veil-piercing discussion titled "[m]isrepresentation of the identity of members" and "No Innocent Parties Affected." (Motion, ECF No. 271, at 18-19.)

DIRECTV makes much of the issue of who owns Its Thundertime LLC (DE). (*E.g.*, Motion, ECF No. 271, at 18-19.) Firstly, this issue does not discernibly relate to the veil-piercing inquiry. Whether or not Kimberli Coley is a member does not change the fact that Its Thundertime LLC (DE) was incorporated and capitalized three years before the lawsuit began and has since had nothing to do with the lawsuit. Indeed, the questioning of Randy and Kimberli Coley as to the ownership of Its Thundertime LLC (DE) was irrelevant to the substantive issues of the above-captioned case and whether Mr. Coley was liable to DIRECTV. Contrary to DIRECTV's assertion, Kimberli Coley's involvement with Its Thundertime LLC (DE) was not

relevant to whether Kimberli Coley was entitled to summary judgment. Its Thundertime LLC (DE) was not mentioned in Ms. Coley's brief in support of her motion for summary judgment or accompanying affidavit, for instance. (ECF No. 164.)

Now, DIRECTV seeks to appropriate the assets of Its Thundertime LLC (DE). This formerly irrelevant limited liability company is of course relevant to the Motion now before the Court. And therefore, the ownership of Its Thundertime LLC (DE) has been addressed squarely by Mr. Coley in his deposition and in the attached Declaration.

DIRECTV's Motion should be denied for all of the reasons stated above. However, if the Court reaches the question of the ownership of Its Thundertime LLC (DE), it would be appropriate to have an evidentiary hearing on the matter to ascertain the witness testimony and documents at issue. DIRECTV is importing testimony that was not relevant to the underlying lawsuit to this Motion and seeks to characterize such testimony as conclusive, or perhaps preclusive, by casting it as necessary to Kimberli Coley's motion for summary judgment. It was not, and to the extent that the Coleys either mixed up their facts with respect to the various limited liability companies, misunderstood the questions being asked, or were not prepared for those questions, it is highly appropriate for such disputed issues of fact to be subject to a hearing to allow in-person testimony on the matter.

In addition to Mr. Coley's June 16, 2015, deposition and the Declaration attached to this brief (Coley Decl. ¶¶ 7, 16-17), the Declaration of Jason Fearon also shows that Kimberli Coley is a member of Its Thundertime LLC (DE). Fearon is the Coleys' long-time attorney for their real estate transactions, including the 2008 transactions that capitalized Its Thundertime LLC (DE). Fearon states unequivocally that the properties were conveyed to Its Thundertime LLC (DE) in return for 50% interests in Its Thundertime LLC (DE) to be owned by Kimberli and Randy

Coley. (Fearon Decl. ¶¶ 5-6.) He saw the Operating Agreement that provided that both Coleys were members, and four exhibits attached to his Declaration further document and support that the transaction involved both Coleys contributing interests in real property in return for 50% interests in Its Thundertime LLC (DE). (Fearon Decl. ¶ 5 and accompanying Exh. A-D.) Fearon further states that Its Thundertime LLC (DE) has always operated as a limited liability company with two members and that Kimberli Coley has signed documents on behalf of Its Thundertime LLC (DE) in her capacity as a Member/Manager. (Fearon Decl. ¶ 8 and Ex. D.)

In particular, Fearon notes that both Coleys signed the deeds for contributing properties to Its Thundertime LLC (DE), which are attached to his Declaration as Exhibit A. (Fearon Decl. ¶ 5.) The General Warranty Deed provides that "Grantor" includes the plural and refers to "Randy P. Coley and wife Kimberli M. Coley." (Fearon Decl. Ex. B.) The Grantee is "Its Thundertime LLC" with address P.O. Box 8702, Wilmington, Delaware 19899. (Fearon Decl. Ex. B.) The deed provides that "[t]he Grantor, for a valuable consideration paid by Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the grantee, in fee simple, all that certain lot or parcel of land situated in Johnston County…." Plainly, the documents show that Kimberli Coley did not convey her half-interest in such property by gift to Its Thundertime LLC (DE). (*Cf.* Coley Decl. 17.) Rather, she conveyed her property interests in return for a 50% membership interest in Its Thundertime LLC (DE). (Coley Decl. ¶ 16; Fearon Decl. ¶ 5.)

Exhibit B to Fearon's Declaration includes a HUD-1 settlement statement signed by Kimberli and Randy Coley both as "member" of Its Thundertime LLC (DE), a deed of trust signed by both Randy and Kimberli Coley as "Member & Manager," a Declaration of Limited Liability Company or Limited Liability Partnership and Authority to Borrow for Branch Banking

and Trust that reflect that Randy and Kimberli Coley each had a 50% interest in Its Thundertime LLC (DE), and guaranties for the loans on real properties signed by Kimberli Coley and Randy Coley pursuant to a notarization by Jason Fearon. (Fearon Decl. Ex. B.)

Fearon is willing to testify as to these points and be subject to regular cross-examination and questioning by the Court.

Moreover, other settlement documents from 2008 are replete with references to Kimberli Coley contributing property and participating in Its Thundertime LLC (DE) in an ownership capacity. That includes the deed of trust, loan guarantees, HUD-1 settlement statements, and deeds from the 2008 contribution of real estate to Its Thundertime LLC (DE) by the Coleys. (*See* Fearon Decl.; Coley Decl. Ex. 5-6.) It is beyond dispute that Kimberli Coley contributed large amounts of real property to Its Thundertime LLC (DE), and there is no reason to believe that she did so as a gift; indeed she did not. (Coley Decl. ¶ 17.)

With respect to DIRECTV's arguments concerning tax returns that it has filed under seal, Mr. Coley addresses this issue in paragraphs 5, 10, and 11 of his Declaration, which is corroborated by the Second Declaration of Stewart Simpson.

For the above reasons, Kimberli Coley must be considered an innocent third party who is highly relevant to the issue of reverse veil-piercing. A 50% owner of Its Thundertime LLC (DE) should not, of course, be ignored in determining whether DIRECTV has a right to execute against those assets.

To the extent this is not clear from the exhibits and declarations submitted to the Court in connection with this response brief, a hearing should be held on Ms. Coley's interest (equitable and/or legal) in a limited liability company to which she has contributed substantial capital. The Coleys' long-standing real estate and transactional attorney, Jason Fearon, can corroborate that

Ms. Coley is a 50% owner of Its Thundertime LC (DE), and documents attached to Fearon's Declaration further corroborate the same. Indeed, this ownership question is a principal reason why the due process argument in Section I of this brief is so fundamental when a party seeks injunctive relief against entities that have not been subjected to judicial process.

## CONCLUSION

WHEREFORE, Defendant Mr. Coley respectfully requests that the Court deny DIRECTV's Motion (DE #271). In the alternative, Mr. Coley requests a hearing on disputed issues of fact involved in this Motion.

This the 12th day of October, 2015.

GORDON & REES, LLP


 s/ Robert W. Shaw
Brian A. Scotti
VA Bar No. 74510
1300 I St., NW, Suite 825
Washington, DC 20005
Ph: 202-399-1009
Fax: 202-800-2999
bscotti@gordonrees.com

Robert Shaw
NC Bar No. 32923
3737 Glenwood Ave., Suite 100
Raleigh, NC 27612
Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served on counsel of record for the propounding party below on this date by this Court's CM/ECF system, which will send notification to the following counsel of record:

John H. Jamnback
Lyle Tenpenny
Yarmuth Wilsdon PLLC
818 Stewart Street, Suite 1400
Seattle, WA 98101
jjamnback@yarmuth.com
ltenpenny@yarmuth.com

Robert E. Travers
Williams Mullen, P.C.
222 Central Park Avenue, Ste. 1700
Virginia Beach, VA 23462
rtravers@williamsmullen.com

This the 12th day of October, 2015.

GORDON & REES, LLP


 s/ Robert W. Shaw
Robert Shaw
NC Bar No. 32923
3737 Glenwood Ave., Suite 100
Raleigh, NC 27612
Admitted *pro hac vice*