IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| SKY CABLE, LLC, et al., | ) |
| Plaintiffs, | ) Civil Action No. 5:11cv00048 |
| v. | ) |
| RANDY COLEY, et al., | ) By: Michael F. Urbanski |
| | ) United States District Judge |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the court on judgment creditor DIRECTV, Inc.'s ("DIRECTV") motion for a cost bond under Rule 7 of the Federal Rules of Appellate Procedure ("Rule 7"). ECF No. 337. Randy and Kimberli Coley (collectively, "the Coleys") filed briefs in opposition, ECF Nos. 342, 343, and the matter was referred to Magistrate Judge Robert Ballou, ECF No. 339. On December 5, 2016, Judge Ballou issued a report recommending that DIRECTV's motion be granted, and that a $75,000 appeal bond be imposed. ECF No. 362. The Coleys timely filed objections, ECF Nos. 365, 366, to which DIRECTV responded, ECF No. 369. For the reasons that follow, the court **ADOPTS** the report and recommendation in its entirety (ECF No. 362), **GRANTS** DIRECTV's motion (ECF No. 337), and requires the appellants, Randy Coley, Kimberli Coley, and Its Thundertime, LLC[1] ("Its Thundertime") to furnish a Rule 7 cost bond in the amount of $75,000.

---

[1] Its Thundertime is one of several limited liability companies (collectively, "the LLCs") that the court previously found to be alter egos of Randy Coley, such that their assets are subject to the judgment against him. See generally ECF No. 298. Its Thundertime is the only LLC currently pursuing an appeal. ECF Nos. 319, 323; see ECF No. 367 (granting South Raleigh Air, LLC's motion to dismiss its appeal).

I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit Court of Appeals has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007), cert. denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Techs., Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010) (citing Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va.

2

2008)), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed.").

Further, objections that only repeat arguments raised before the magistrate judge are considered general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505], 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846 (first brackets in original). A plaintiff who reiterates his previously raised arguments will not be given "the second bite at the apple []he seeks." Id. Instead, his re-filed brief will be treated as a general objection, which has the same effect as a failure to object. Id.

## II.[2]

In their objections, the Coleys raise four main issues—one factual, three legal. First, they object to the magistrate judge's finding that "the Coley [p]arties have engaged in vexatious or bad faith conduct," ECF No. 362, at 5, particularly as this finding relates to Kimberli Coley. Second, the Coleys argue that Rule 7 does not permit the court to include the expected costs of attorneys' fees in an appeal bond. Third, they argue that, even if

---

[2] The underlying facts of this case have been exhaustively summarized in prior opinions. See, e.g., ECF No. 298, at 1–22.

3

attorneys' fees may be included in an appeal bond in some circumstances, they may not here, where the appeal concerns a matter of Delaware state law unrelated to the judgment under the Federal Communications Act, 47 U.S.C. § 605(a) ("FCA"). Finally, the Coleys suggest that, if the court does adopt the magistrate judge's report, a lis pendens on Its Thundertime's property, rather than a cash bond, should be imposed. The court will address each argument in turn.

## A. Kimberli Coley's Conduct

Kimberli Coley argues that "the Report and Recommendation is clearly erroneous and contrary to law because it is based on the mistaken fact-finding that the Coley Parties have engaged in 'vexatious and bad faith conduct' in the post-judgment proceedings," which cannot be correct, given that "the term 'Coley Parties,' as defined in the Report and Recommendation, includes Kimberli Coley, Its Thundertime, and South Raleigh Air—none of whom were parties to the post-judgment proceedings." ECF No. 365, at 5 (citation omitted).

Kimberli Coley has misstated the findings of the magistrate judge. The report did not consider only conduct during "post-judgment proceedings"; rather, it found that "there is no question that the Coley Parties have engaged in vexatious or bad faith conduct, and have been sanctioned repeatedly for such conduct." ECF No. 362, at 5. Reviewing the Coleys' behavior over the lengthy course of this litigation confirms the accuracy of the report's factual findings.

For instance, the court's memorandum opinion of July 18, 2016, ECF No. 298, chronicles several instances of bad faith conduct involving Kimberli Coley. Kimberli Coley

4

refused to comply with the terms of a settlement agreement she and Randy Coley entered into in bankruptcy court—conduct which the court, agreeing with the plaintiffs, found to amount to "playing fast and loose with the federal judiciary." Id. at 3–4. Even more outrageous, Kimberli and Randy Coley have made inconsistent statements to this court, under oath, in order to serve their own interests at the time. "Throughout the underlying litigation, Randy and Kimberli Coley adamantly maintained that Kimberli Coley had no involvement whatsoever in her husband's cable business or in his business ventures generally." Id. at 9. Relying on these assertions, DIRECTV voluntarily dismissed its claims against her. Id. at 11. Once DIRECTV sought to enforce its judgment against the substantial assets associated with the LLCs, the Coleys changed their tune, averring in expansive terms of Kimberli Coley's involvement in, and part ownership of, these entities. Id. Further, as set forth at some length in the July 18, 2016 memorandum opinion, this sleight of hand included the production in discovery of contradictory Its Thundertime operating agreements, one produced pre-judgment listing Randy Coley as sole manager/member, and another produced post-judgment including Kimberli Coley as a member. Id. at 12–17. In addition, the memorandum opinion addresses the rampant commingling of assets between Randy and Kimberli Coley and the sham LLCs. Id. at 17–22. Accordingly, the court equitably estopped the Coleys from asserting that Kimberli Coley has any membership interest in the LLCs, finding that the Coleys "plainly misled the parties (and the court) about the nature of Kimberli's interest" in her husband's companies. Id. at 31–33. Nonetheless, in her brief in opposition to DIRECTV's bond motion, Kimberli Coley continues to assert that she "owns a 50% membership interest in [Its] Thundertime." ECF No. 343, at 2.

5

In short, the record is replete with examples of Randy and Kimberli Coley's attempts to obfuscate, mislead, and generally subvert the cause of justice.[3] The court **ADOPTS** the factual findings of the magistrate judge.

## B. Attorneys' Fees in Rule 7 Costs Bonds

The magistrate judge concluded that anticipated attorneys' fees are not categorically precluded from cost bonds under Rule 7. ECF No. 362, at 5. In coming to this conclusion, he acknowledged a circuit split on this issue: the First, Second, Sixth, Ninth, and Eleventh Circuits have allowed attorneys' fees to be included in Rule 7 appeal bonds, while the Third and D.C. Circuits have not. Id. at 6. Ultimately, the magistrate judge found the reasoning of the majority of circuit courts to consider the issue persuasive.

Randy Coley objects to this conclusion. He argues that the costs imposed under Rule 7 are controlled by the definition of "costs" provided in Rule 39(e) of the Federal Rules of Appellate Procedure, which does not include attorneys' fees. ECF No. 366, at 2–3. Coley justifies this conclusion by citing "the interplay" between Rules 7 and 39:

> FRAP 39(e) lists the appellate costs that a district court may tax for a prevailing party <u>after</u> an appeal, whereas FRAP 7 enables a district court to impose these exact same FRAP 39(e) costs <u>before</u> an appeal is heard. The difference between FRAP 7 and 39 is not <u>what</u> costs may be taxed but rather <u>when</u> those costs are imposed.

Id. at 3. The court disagrees.[4]

---

[3] To the extent the Coleys intend to argue that the report incorrectly attributed vexatious or bad faith conduct to the alter ego LLCs, this argument is also without merit. Because corporations, including LLCs, are artificial persons, they cannot mislead the court, ignore court orders, or behave in bad faith, except through their members—in this case Randy and (as she now inconsistently asserts) Kimberli Coley. Moreover, the court previously found these LLCs to be alter egos of Randy Coley, see ECF No. 298, thus "treat[ing] the corporation and its shareholders as one, DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 683 (4th Cir. 1976). Accordingly, the extensive bad faith conduct of Randy and Kimberli Coley is equally attributable to the LLCs.

6

As the magistrate judge noted, Coley's argument goes against the weight of authority. See Int'l Floor Crafts, Inc. v. Dziemit, 420 F. App'x 6, 16–19 (1st Cir. 2011); Azizian v. Federated Dep't Stores, Inc., 499 F.3d 950, 954–59 (9th Cir. 2007); In re Cardizem CD Antitrust Litig., 391 F.3d 812, 817 (6th Cir. 2004); Pedraza v. United Guar. Corp., 313 F.3d 1323, 1328–35 (11th Cir. 2002); Adsani v. Miller, 139 F.3d 67, 71–76 (2d Cir. 1998). Each of these cases concludes that attorneys' fees may be included within a Rule 7 appeal bond if the underlying statute defines costs to include attorneys' fees.[5]

Though the American rule establishes that "each party to a litigation is responsible for paying its own attorneys' fees," numerous statutes depart from this rule, and "define costs recoverable to include fees." Int'l Floor Crafts, Inc., 420 F. App'x at 17; see Pedraza, 313 F.3d at 1331. Moreover, "[c]ourts understand these fee-shifting statutes to account for appellate fees as well." Int'l Floor Crafts, Inc., 420 F. App'x at 17; Azizian, 499 F.3d at 958; see also, e.g., Int'l Cablevision, Inc. v. Noel, 982 F. Supp. 904, 916 (W.D.N.Y. 1997) (concluding "that plaintiff is entitled to seek compensation for attorneys' fees incurred in its appeal" in successful action under the FCA). Thus, the question becomes: Should Rule 7, written "to provide an appellee security for the payment of such costs as may be awarded to him in the event that the appellant is unsuccessful in his appeal," Page v. A. H. Robins Co.,

---

[4] Coley's objection largely reiterates arguments previously made to the magistrate judge, compare ECF No. 342, at 4–7, with ECF No. 366, at 2–4, and does not entitle Coley to de novo review of this issue. See Moon, 742 F. Supp. 2d at 829 ("General objections that merely reiterate arguments presented to the magistrate judge . . . have the same effect as a failure to object, or as a waiver of such objection." (citing Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008)). Nonetheless, the court will consider Coley's objections.

[5] In re Cardizem CD Antitrust Litigation actually goes further, and affirms the district court's inclusion of attorneys' fees in a Rule 7 appeal bond where the underlying statute distinguished between attorneys' fees and costs. 391 F.3d at 817 (underlying statute allowed the court to award "any damages incurred, including reasonable attorney's fees and costs" (quoting Tenn. Code. Ann. § 47-18-109)). But see Pedraza, 313 F.3d at 1333–34 (declining to include attorneys' fees in an appeal bond because the underlying statute allowed an award of costs "together with reasonable attorneys [sic] fees"—thus treating attorneys' fees as distinct from costs. This difference is immaterial to the instant case because, as explained infra, the FCA includes attorneys' fees within its definition of costs.

7

Inc., 85 F.R.D. 139, 139–40 (E.D. Va. 1980) (citing 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice 207.2, at 1302), take its definition of "costs" from the underlying statute or, as Randy Coley argues, from Rule 39? These cases reject the Randy Coley's argument for four reasons.

First, the Supreme Court's decision in Marek v. Chesny, 473 U.S. 1 (1985), counsels against such an approach. In Marek, plaintiff brought suit against police officers under 42 U.S.C. § 1983 and state tort law. Id. at 3–4. Prior to trial, defendants made an offer of judgment, under Federal Rule of Civil Procedure 68, of $100,000, which plaintiff rejected. Id. At trial, a jury awarded plaintiff $60,000 in damages. Id. at 4. Plaintiff then filed a request for $171,692.47 in costs, including attorneys' fees. Defendants opposed this request, relying on Rule 68, "which shifts to the plaintiff all 'costs' incurred subsequent to an offer of judgment not exceeded by the ultimate recovery at trial." Id. Defendants argued that attorneys' fees are included within "costs" for the purpose of Rule 68, which contains no "costs" definition. Id. The Court agreed with defendants. It found that the decision to leave costs undefined in Rule 68 was not "mere oversight," but rather, "the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority." Id. at 9.

Though Marek dealt with Rule 68 of the Federal Rules of Civil Procedure, its reasoning is valid in the Rule 7 appellate context as well:

> Federal Rule of Appellate Procedure 7 does not differ from Federal Rule of Civil Procedure 68 in any way that would lead us to adopt a different interpretive approach in this case than was embraced by the Supreme Court in Marek. Quite the contrary, close scrutiny reveals that there are several substantive and linguistic parallels between Rule 68 and Rule 7. Both

8

> concern the payment by a party of its opponent's "costs," yet neither provision defines the term "costs." See Adsani, 139 F.3d at 74 ("Rule 7 does not have a pre-existing definition of costs any more than Fed. R. Civ. P. 68 . . . had its own definition."). Moreover, just as the drafters of Rule 68 were aware in 1937 of the varying definitions of costs that were contained in various federal statutes, the same certainly can be said for the authors of Rule 7, which bears an effective date of July 1, 1968. As such, the reasoning that guided the Marek Court's determination that Rule 68 "costs" are to be defined with reference to the underlying cause of action is equally applicable in the context of Rule 7.

Pedraza, 313 F.3d at 1332; see In re Cardizem CD Antitrust Litigation, 391 F.3d at 816; cf. Azizian, 499 F.3d at 959 ("While while some commentators have criticized Adsani and Pedraza for attach[ing] significant consequences to minor and quite possibly unintentional differences in the wording of fee-shifting statutes, Marek counsels that we must take fee-shifting statutes at their word. This approach is consistent with the ancient and sound rule of construction that each word in a statute should, if possible, be given effect." (quotation marks and citations omitted)).

"Second, Rule 39 does not contain any 'expression[] to the contrary.' There is no indication that the rule's drafters intended Rule 39 to define costs for purposes of Rule 7 or for any other appellate rule." Azizian, 499 F.3d at 958 (brackets in original) (quoting Marek, 479 U.S. at 9); see In re Cardizem CD Antitrust Litigation, 391 F.3d at 817 ("Fed. R. App. P. 39 does not define 'costs' at all; rather, it merely lists which costs of appeal can be 'taxed' by the district court if it chooses to order one party to pay costs to the other. Nor does 28 U.S.C. § 1920 purport to define 'costs'; rather, it lists those costs that a court may properly 'tax' for its own benefit."); Pedraza, 313 F.3d at 1330 (Rule 39 merely "lists some costs that are taxable in the district court. Notably, the rule never sets forth an exhaustive list or a

9

general definition of 'costs.'"); Adsani, 139 F.3d at 74 ("Specific costs are mentioned [in Rule 39] only in the context of how that cost should be taxed, procedurally speaking."). Indeed, Fed. R. App. P. 38 differs from Rule 39, and "provides that the court of appeals may award 'damages and . . . costs,' which include, according to that rule's advisory committee note, 'damages, attorney's fees and other expenses incurred by an appellee.'" Azizian, 499 F.3d at 958 (quoting Fed. R. App. P. 38 advisory committee's note (1967 adoption)). This discrepancy between "costs" in Rules 38 and 39 strongly suggests that Rule 39 was not intended to "create a uniform definition of 'costs,' exclusive of attorneys' fees." Id. Moreover, the 1967 Rules Advisory Committee note to Rule 39(e) describes the costs contemplated in Rule 39 as "within the undertaking of the appeal bond." Fed. R. App. P. 39(3) advisory committee's note (1967 adoption) (emphasis added). This suggests that those costs "are among, but not necessarily the only, costs available on appeal." Azizian, 499 F.3d at 958; see Int'l Floor Crafts, Inc., 420 F. App'x at 18. This conclusion is only strengthened by the plain text of Rule 39(e) itself, which states that "the . . . costs on appeal [defined in this rule] are taxable in the district court for the benefit of the party entitled to costs under this rule." Fed. R. App. P. 39(e) (emphasis added). Thus, Rule 39(e) explicitly declines to define the appellate costs to which a party is entitled under a different rule or statute—such as Rule 7 or 47 U.S.C. § 605. In sum, "[u]nder no fair reading of the simple, unambiguous language of Rule 39 can an exportable definition of 'costs' be perceived in the language of that provision." Pedraza, 313 F.3d at 1330.

Third, including attorneys' fees within the definition of costs under Rule 7 would best vindicate the purposes of fee-shifting provisions: "ensur[ing] the effective prosecution of

10

meritorious claims," and "protect[ing] defendants from burdensome litigation having no legal or factual basis." Id. at 1333.

> If Fed. R. App. 7 is read to include attorneys' fees within the definition of 'costs' whenever Congress has so defined the term in the statutory fee shifting provision that attends the plaintiff's underlying cause of action, then in appropriate qualifying cases—e.g., where there is a significant risk of insolvency on the appellant's part—district courts can require that the fees that ultimately would be shiftable be made available ab initio.

Id. This dovetails neatly with the purpose of Rule 7: "to protect the rights of appellees brought in to appeals courts by [appellants that pose a payment risk]." Adsani, 139 F.3d at 75. This reading also disincentivizes frivolous appeals, a concern within the ambit of both fee-shifting statutes in general and Rule 7 in particular. Pedraza, 313 F.3d at 1333.

Fourth, this rule is in agreement with the district court's typical role in assessing costs:

> [A]llowing district courts to include appellate attorney's fees in estimating and ordering security for statutorily authorized costs under Rule 7 comports with their role in taxing the full range of costs on appeal. In practice, district courts are usually responsible at the conclusion of an appeal for taxing all appellate costs, including attorney's fees, available to the prevailing party under a relevant fee-shifting statute.

Azizian, 499 F.3d at 959.

Randy Coley argues that the court should depart from this line of cases, principally relying on Hirschensohn v. Lawyers Title Ins. Corp., No. 96-7312, 1997 WL 307777 (3d Cir. June 10, 1997), and In re Am. President Lines, Inc., 779 F.2d 714 (D.C. Cir. 1985).[6]

---

[6] Randy Coley also cites to McDonald v. McCarthy, 966 F.2d 112 (3d Cir. 1992). In McDonald, the Third Circuit Court of Appeals, relying on Marek, held that Rule 39's definition of costs cannot be read to preclude an award of attorneys' fees under a fee-shifting statute. The point of McDonald is that a statutory award of attorneys' fees is not constrained by Rule 39's definition of costs. Further, McDonald makes no mention of Rule 7, and does not support the argument that the definition of "costs" in Rule 39 operates to preclude an award of attorneys' fees under a fee-shifting statute or the imposition of a cost bond under Rule 7. In fact, the reasoning in McDonald is entirely consistent with Int'l Floor Crafts,

11

However, "neither In re Am. President Lines nor Hirschensohn arose in the context of an underlying statute that provides for the shifting of attorneys' fees."[7] Pedraza, 313 F.3d at 1330; Adsani, 139 F.3d at 73–74. Thus, these cases are distinguishable, and merely "comport[] with the usual practice in the United States that a prevailing party is not entitled to recover attorney's fees as 'costs' in the absence of a statute allowing such an award." Id. at 73. To the extent In re Am. President Lines, Inc. and Hirschensohn restrict Rule 7 appeal bonds to those costs contemplated in Rule 39, they do so in mere dicta; that rule is not essential to those cases' result. Moreover, "the seemingly absolute rule announced in [In re Am.] President [Lines, Inc.] either has been modified by or has been overruled implicitly by Montgomery & Assocs. v. CFTC, 816 F.2d 783, 784 (D.C. Cir. 1987)." Adsani, 139 F.3d at 73 n.6. In Montgomery, the D.C. Circuit held that "costs" in Rule 39 may include attorneys' fees if the underlying statute allows for their recovery as part of costs. Id.; Int'l Floor Crafts, Inc., 420 F. App'x at 18–19. "Thus, in light of Montgomery, [In re Am.] President [Lines, Inc.] provides an ambiguous precedent of little authority." Adsani, 139 F.3d at 73 n.6.

The persuasive nature of the majority reasoning is only strengthened by the Fourth Circuit's opinion in Andrews v. America's Living Ctrs., LLC, 827 F.3d 306 (4th Cir. 2016). In Andrews, the court held that the "costs" contemplated under Rule 41(d) of the Federal Rules of Civil Procedure may include attorneys' fees "only where the underlying statute provides for attorneys' fees." 827 F.3d at 311. The court's reasoning mirrored that found in

---

Inc., Azizian, In re Cardizem CD Antitrust Litig., Pedraza, and Adsani, in the sense that all of these cases agree that Rule 39's limited definition of costs cannot deprive a party of a statutory award of attorneys' fees, and does not thwart the protection for such an award provided by a Rule 7 cost bond.

[7] While the underlying statute in Hirschensohn, V.I. Code Ann. tit. 5, § 541, did in fact provide for "costs" that included attorneys' fees, the Third Circuit had previously ruled "that section 541 does not apply to appeals" to the Third Circuit. 1997 WL 307777, at *3; see Vasquez v. Fleming, 617 F.2d 334, 335–36 (3d Cir. 1980).

12

the majority cases on this issue: it relied on Marek, made reference to the goal of deterring vexatious litigation (a goal shared by Rule 41(d) and Rule 7), and ultimately allowed attorneys' fees under Rule 41(d) to minimize inconsistency with other rules. Id. at 311–12. As the magistrate judge recognized, Andrews suggests "that the Fourth Circuit would follow the majority view in allowing attorneys' fees under a Rule 7 bond." ECF No. 362, at 7.

Randy Coley invites the court to privilege Rule 39's definition of "costs" over any number of contradictory statutory definitions when imposing a Rule 7 appeal bond. The court declines to do so. Instead, the court will adopt the reasoning of a majority of circuit courts to consider this issue, and hold that a Rule 7 appeal bond may include attorneys' fees where the underlying statute provides for attorneys' fees as a part of "costs." In this case, the FCA defines costs to include "awarding reasonable attorneys' fees." 47 U.S.C. § 605(e)(3)(B)(iii). Thus, the court may include attorneys' fees when imposing a Rule 7 appeal bond. The court **ADOPTS** the findings of the magistrate judge in this regard.

### C. Attorneys' Fees Under the FCA

Randy Coley also objects to the magistrate's finding that "attorneys' fees incurred in post-judgment collection efforts, including defending an appeal, are recoverable in an FCA case." ECF No. 362, at 8. Randy Coley argues that this is error: because the appeal focuses on 6 Del. Code § 18-703, which contains no attorneys' fees provision, rather than the underlying judgment, the court may not incorporate attorneys' fees into the appeal bond. ECF No. 366, at 5. This argument is without merit.

As the magistrate judge noted, "[s]everal district courts have awarded or contemplated awarding attorneys' fees under the FCA for post-judgment collection and

13

appeal proceedings." ECF No. 362, at 8. These cases contemplate awards of attorneys' fees on appeal based on whether the judgment debtor appeals at all, not the theory on which the appeal is based. E.g., G&G Closed Circuit Events, LLC v. CCDI, Inc., No. H-13-1735, 2014 WL 1775519, at *2 (S.D. Tex. May 2, 2014) (ordering recovery of $15,000 "in the event a defendant files an appeal"); Joe Hand Promotions, Inc. v. Crowder, No. 2:13-cv-00260, 2013 WL 12033212, at *1 (W.D. Tenn. Oct. 17, 2013) (ordering "[t]hat [p]laintiff recover, in the event [d]efendants fail to voluntarily pay the judgment, . . . reasonable attorneys' fees for post-trial and appellate services").

Moreover, it makes little sense to describe 6 Del. Code § 18-703 or "the equitable remedy of reverse-veil piercing," see ECF No. 366, at 5, as "the statute[s] underlying the appeal" such that they would control for attorneys' fees-shifting purposes. These provisions govern the manner in which a judgment creditor may collect on a preexisting judgment; they do not describe or create causes of action upon which a party may be sued. True, the Coleys' appeal in this matter focuses on 6 Del. Code § 18-703, but only because they contend that that statute constrains the manner in which DIRECTV may collect on the underlying FCA judgment. Similarly, DIRECTV will expend resources opposing the Coleys' appeal not because the parties are concerned about the manner in which Delaware reverse-veil piercing law is construed, but in order to "make the judgment a reality." Free v. Briody, 793 F.2d 807, 808 (7th Cir. 1986). To hold otherwise would amount to judicial amendment of 47 U.S.C. § 605(e)(3)(B)(iii); rather than "direct[ing] the recovery of full costs, including reasonable attorneys' fees," id., the court would award attorneys fees unless the judgment debtor saw fit to question the application of another state or federal statute, rule of law, or equitable

14

remedy.[8] Though convenient for the Coleys, such a rule draws no support from the statutory text, is divorced from judicial precedent,[9] and would produce arbitrary disparities in attorneys' fees awards. The court **ADOPTS** the report and recommendation, and finds that the appeal bond should include attorneys' fees.

### D. Lis Pendens as an Alternative to an Appeal Bond

Finally, Randy Coley argues that, rather than requiring an appeal bond, the court should order a lis pendens on Its Thundertime's property in favor of DIRECTV. ECF No. 366, at 6–7. The court disagrees.

The court first notes that this point evinces further inconsistency on the Coleys' part. Seeking to distance Randy Coley from the various LLCs in this case, the Coleys argue that the LLCs should not be included as judgment debtors, and that the magistrate judge erred in concluding that these LLCs engaged in vexatious or bad faith conduct. Yet now, when Randy Coley faces the possibility of having to furnish an appeal bond, he offers up the property of Its Thundertime—a company that, according to his vociferous argument, enjoys an authentic, separate existence, and that has declined to oppose DIRECTV's motion for bond or object to the Report and Recommendation.

---

[8] Indeed, if this were the rule, a judgment debtor could claim that a prior court decision (perhaps relating to equitable methods of executing on a judgment) "underlies the appeal," such that attorneys' fees may not be awarded unless the decision in that case allows them. The argument the Coleys advance is virtually boundless in its attempt to supersede the statutory text and preclude awards of attorneys' fees on appeal.

[9] Randy Coley cites only one case in support of this argument: Willie M. v. Hunt, 732 F.2d 383 (4th Cir. 1984), in which the Fourth Circuit Court of Appeals declined to award appellate attorneys' fees for class definition issues upon which they "did not prevail" and which "were unrelated to their civil rights claims." Id. at 387. The court found that the fees requested stemmed from counsel's failure "to formulate a consent judgment that clearly and unambiguously defined the plaintiff class that it was designed to benefit." Id. For this reason, the court also found the litigation underlying the fee request to be completely unnecessary, further undermining the request. Here, by contrast, the litigation on appeal arises directly from the Coleys' efforts to thwart collection on the underlying judgment under the FCA.

15

Leaving the foregoing issue aside, a lis pendens would not adequately ensure payment of DIRECTV's appeal costs. Black's Law Dictionary defines a lis pendens as a "notice, recorded in the chain of title to real property . . . to warn all persons that [the] property is the subject matter of litigation." A lis pendens does not represent a monetizable interest in property. Moreover, though the Coleys suggest that the appeal bond would create an impermissible barrier to appeal, they offer no proof of their financial inability to afford such a bond. Instead, the Coleys concede that Its Thundertime owns $3,000,000 in real property assets, but complain that these assets are illiquid, and thus are insufficient to allow the parties to pay a $75,000 appeal bond. With assets of this magnitude, the Coleys have not demonstrated the financial inability to pay for a bond. See Adsani, 139 F.3d at 79 ("[W]e find that without any showing of her financial hardship, the bond imposed on Adsani is not an impermissible barrier to appeal and Adsani's arguments to the contrary should be rejected.").

### III.

For the forgoing reasons, the court **ADOPTS** the report and recommendation in its entirety, **GRANTS** DIRECTV's motion (ECF No. 337), and imposes a Rule 7 cost bond in the amount of $75,000. An appropriate Order will be entered.

Entered: 01-30-2017

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

16

Case 5:11-cv-00048-MFU   Document 370   Filed 01/31/17   Page 16 of 16   Pageid#: 6630